CHRISTIAN, J.
This case is before us, upon a petition filed by James Clarke, invoking the original Jurisdiction of this court for a writ of habeas corpus. The petition and the record therewith filed show that the petitioner, Clarke, is confined in jail under an execution (capias pro fine) issued upon a judgment of the hustings court of the city of Richmond for the sum of thirty dollars, the fine assessed by said court, and twenty-two dollars and five cents, the costs of prosecution on behalf of the commonwealth.
It is further shown that the petitioner tendered to James M. Tyler, sergeant of the city of Richmond, “a coupon, which was due and past maturity, for thirty dollars, *which said coupon was cut from a bond of the state of Virginia issued under the provisions of the act of assembly passed March 30, 1871, commonly known as the funding bill,” and the sum of twenty-two dollars and five cents in money, that being the amount of costs.
The city sergeant refused to receive the coupon tendered in payment of the fine imposed by the court. And thereupon Clarke applied to this court for a writ of habeas corpus, and insists upon his right to pay the fine assessed against him by the hustings court in a coupon of a bond of the state, and that upon such payment, with the costs of prosecution, he is entitled to his discharge from further imprisonment.
This record, therefore, presents for our consideration the single question, Whether a fine imposed for a violation of law can be discharged in coupons, or whether it can only be demanded and paid in money?
This is the same question which was elaborately argued at the January term of this court, in the case of Tyler, sergeant, v. Taylor, auditor. That case was argued upon a petition to this court for a writ of mandamus, to compel the auditor of public accounts to receive from the sergeant of the city of Richmond certain coupons which had been received by him in payment of a fine imposed on one Mayo for a criminal offence. In that case this court unanimously held that the writ of mandamus could not be issued against the auditor of public accounts because he was not the public officer whose duty it was under the law to receive fines collected by the city sergeant, and declaring that this court could only exercise its extraordinary jurisdiction by way of mandamus to compel a public officer to discharge a duty which the law imposed on him, and not on another; and inasmuch as the city treasurer, and not the auditor of public accounts, was the public officer whose duty it was to receive all fines collected by the city sergeant, the rule was *discharged and the case dismissed without deciding the question on its merits. In that case it was said, and is here repeated: “This court is always ready and willing to decide, to the best of its ability, all questions however important or difficult, or however they may affect public or private interests, which are properly brought before it, no matter how great or far-reaching may be the responsibilities it must assume in such decision. But the court is not willing, nor is it any part of its judicial functions, to decide questions outside of the case before it, and thus constitute itself a moot court to determine abstract questions.”
The question argued in the case of Tyler, sergeant, v. Taylor, auditor, did not arise upon the pleadings in the cause, and the court did not (for the reasons stated in its opinion) feel called upon to decide an abstract question. But the same question now does arise properly upon the record in this case, and the court is now prepared to meet the question and assume all the responsibilities which may attach to its decision, however it may affect individual or public rights, private or political questions.
But the question we have to determine (however it is sought to be connected with questions which are the subject, unhappily, of political agitation) is purely a legal question, to be determined upon well defined legal principles, and the rules of construction universally recognized as applicable to the statute law. It all depends upon the true construction to be given to the second section of the act approved March 30, 1871, entitled an act to provide for the funding and payment of the public debt. This section, after declaring that the owners of any of the bonds, stocks or interest certificates heretofore issued by this state * * * may fund two-thirds of the amount of the same * * * in six per centum coupon or registered bonds of the state, &c., &c., contains the following pro *58 vision: “The bonds shall be made *payable to order or bearer, and the coupons to bearer, at the treasury of the state, and bonds payable to order may be exchanged for bonds payable to bearer, and registered bonds may be exchanged for coupon bonds, or vice versa, at the option of the holder. The coupons shall be payable semiannually, .and receivable at and after maturity for all taxes,, debts, dues and demands due the state, which shall be so expressed on their face.” The only question, then, we have to determine, is whether fines imposed for a violation of law, are included within the terms of the statute? I say this is the only question we have to determine, because the question of the constitutionality of the act above referred to, known as the funding act, has already been determined by this court. The case of Antoni v. Wright, sheriff, 22 Gratt. 833, settles this question. The same arguments against its constitutionality. made in this case were urged in that. I refer to that case and adopt its principles and reasoning as a clear and conclusive exposition of the law, and am of opinion that this decision of the court declaring the constitutionality of the act of March 30, 1871, and declaring that any act of the 'legislature in conflict with the provisions of that act, so far as it may “forbid the collecting officers of the state to receive in payment of taxes and other demands of the state anything else than gold or silver coin, United States treasury notes, or notes of the national banks of the United States.” must be held to be an act “impairing the obligation of a contract,” and therefore unconstitutional and void. This decision of Antoni v. Wright was recognized and reaffirmed in Wise Bros. v. Rogers, second auditor, and Maury & Co. v. Same, 24 Gratt. 169, and must now be held to be the settled law of this state. It is not necessary, therefore, and indeed it would be a vain and useless task, to attempt to go over again the reasons which *governed this court in coming to the conclusions then reached, and firmly adhered to ever since. I can only say for myself, that after a careful consideration of all the views which have been presented on this question, the opinion of Judge Bouldin, in Antoni v. Wright, is a lucid, able and conclusive exposition of the law, is one based upon judicial logic, and fortified by judicial authority, which makes it impregnable against every assault which may be made upon it.
Adopting, therefore, the principles and reasoning in the case of Antoni v. Wright, we are left in this case to a single and very narrow enquiry, and that is, are fines imposed for a violation of law, included in the purview of the statute?
One of the principal and universally adopted rules of construction of statutes, is, that in the enactment of statutes, the rule of interpretation is,.in respect to the intention of the legislature, that where the language is explicit, the courts are bound to seek for the intention in the words of the act itself, and they are not .at liberty to suppose or to hold that the legislature intended anything different from what their language imports. Pot. Dwaris on Statutes, p. 146. Words in a statute are never to be considered as unmeaning and surplusage, if a construction can be legitimately found which will give force to, and preserve all the words in the act. The best rule by which to arrive at the meaning and intention of a law is, to abide by the words which the law-maker has used. Dwaris, p. 179, note. Especially is this the case where the words used have no double or doubtful meaning, but are plain and explicit in their signification; for it is a rule of universal application that effect must be given to the words used by the legislature where_ there is no uncertainty or ambiguity in their meaning.
Now, the words used in the act we are called upon to *construe, are as broad, explicit and comprehensive as any terms which could possibly be used. The act declares that coupons shall be receivable at and after maturity for all taxes, debts, dues and demands due the state. Is there any uncertainty or ambiguity in these terms? They all have a certain, definite, explicit and technical meaning. We cannot discard any one of them as unmeaning and surplusage, but must, according to the rules of construction which bind the courts, give effect to all. We must suppose the legislature knew the ordinary meaning and legal force of the words which they used. If the provision of the act had been that these coupons should be receivable “for all taxes and debts due the state,” there might be some room for doubt whether fines were embraced; for although fines are recoverable by action of debt, and in a certain sense a fine is a debt due the state, yet it might be said with much force, if not conclusively, that the word debt refers to matters of contract, and that, therefore, a fine is not embraced in the meaning of the statute in the word debt. But the words dues and demands are added. Shall we give no effect to these words of explicit meaning? Can we take the liberty of striking these -words out of the statute? If we can, then the courts may override the powers of the legislature, and construe away any act it may pass. These words dues and demands are not uncertain and ambiguous, but have a certain, definite and explicit meaning. The word “due” is defined by Webster to be “that which is owed,” “that which custom, statute or law requires to be paid;” and by Worcester, “that which any one has a right to demand, claim or possess,” “that which can justly be required.” The word demand is a word of still larger significance, and more comprehensive meaning. Indeed, Lord Coke says, the word demand is the largest word in law, except claim. In 2 Coke upon Littleton, 291 b. he “demandum is a word of art, and in the understanding *of the common law, is of so large an extent, as no other word in the law is, unless it be clamum, whereof Littleton maketh mention. § 445.” Webster defines “demand,” “the asking or seeking what is due or claimed to be due;” and Worcester, “a calling for a thing due or *59 claimed to be due.” No words of more explicit or broader signification could have been used than these two words, “dues and demands.” We cannot discard them, but must give them effect. Do they embrace fines? I am bound by every rule of construction to say they do. A fine is something “which the law requires to be paid;” and that is the meaning of the word “dues.” A fine is a thing “due or claimed to be due” to the state, a liability which the state has a right to enforce and demand; and that is the meaning of the word “demand.” I am, therefore, of opinion, that fines are clearly embraced within the meaning and the very words of the statute. The legislature has used words which by their explicit, comprehensive and unmistakable meaning embrace fines, as well as taxes and debts. If after using the words “dues and demands” they had intended to exclude fines, how easy it would have been to have added the words “except fines” after the words “dues and demands.” But having used these broad and comprehensive terms, which by their common and explicit meaning embrace fines, and having used no words of exception, it follows upon every rule of construction that fines are embraced in the terms “dues and demands.”
This construction, which would seem to be free from all doubt, if it rests upon the language of the act, is objected to upon two grounds — First. It is insisted that fines are imposed as one of the potent means of punishing offences against the law, and that the offender does not satisfy the judgment of the court if he pays an amount less than the fine assessed against him, which he does, if he may pay in coupons instead of money, (the coupons *being at a discount). In answer to this view, it is sufficient to remark that the state has a right to say, and has said, in the act of her legislature under consideration, how her “demands” against her citizens shall be satisfied; how the liabilities “due” to her shall be discharged. It might, with the same propriety and with equal force, be argued that debts and taxes due the commonwealth are not fully discharged by payment of coupons; and yet this is done every day under the statute law, sustained and enforced by the judgment of this court. But in point of fact, the judgment for the fine is discharged to its full extent, so far as the stale is concerned, because the coupon represents the obligation of the state for the face value of the coupon offered in payment of the fine.
Second. It is objected that fines are dedicated by the constitution and by statute enacted in pursuance thereof, to the literary fund for school purposes, and if the act under consideration embraces fines, to that extent it is unconstitutional.
Now, it is to be observed that neither the constitution nor any act passed in pursuance thereof, requires the collectors of the public revenues, nor the auditor, to keep separate and distinct each particular fine assessed against offenders, and pay it over as collected to the literary fund; but the requirement is, upon fair construction, to turn over to the literary fund whatever amount may come into the treasury from the source of fines, and dedicate that amount to the purpose indicated. This same argument was pressed most vigorously in the case of Antoni v. Wright (supra), and was answered, I think successfully and conclusively by the lamented Judge Bouldin, and 1 prefer to adopt his views, so clearly and ably put, rather than mar and weaken them by ^ words or views of my own. He says: “But it is argued that the contract in this case is void because it is repugnant to the 8th section, 8th article, and 3d section, 10th article, of the state *constitution, dedicating certain portions of the state revenue to the support of free schools. We think there is no such conflict in this case. * * * It only requires that the obligations of succeeding legislatures shall be firmly met; that there should be what the creation of every new debt imperatively demands, to-wit: an increase of taxation if the existing rate be insufficient. The argument is based on the assumption that subsequent legislatures will fail in their duty, and pursue such a course as may result in mal-appropriation of the funds referred to; that they will decline to meet faithfully the high obligation resting on them, and then rely on the irregular consequences of their own default as an argument against the validity of the debt for which they will have failed to provide. The malappropriation which would follow would not be the legitimate result of the funding act. but in effect would be the act of the legislature failing to discharge its duty. The obligation to provide for the interest due by these coupons is as high as the duty of applying the capitation tax and other funds to the schools. Both duties are alike obligatory, and both may be discharged, as there is no conflict between them. It is only by a failure to discharge the one that the performance of the other can be put in jcooardv. and ;t rests with the legislature by faithfully and fearlessly meeting both obligations, to preserve the plighted faith of the state and protect her constitution from violation.”
After this opinion of the court, deh'vered by Judge Bouldin was announced, there was a motion for a rehearing submitted by the attorney-general, and the court held the case under advisement for several weeks, anxious to correct its decision if it should appear in any respect to be erroneous, and to give to the case that calm and careful reconsideration which the gravity and importance of the questions involved required. After a candid and anxious review of the case, the court could *find no reason to change its opinion, but was confirmed in the justice and reasons of its conclusions. In delivering the judgment upon the motion for a rehearing, Judge Anderson, in an able and exhaustive opinion, discusses the whole question, reaffirming and enforcing the views of Judge Bouldin; and in these views the same judges concurred as in the original decision. I mention this to show with what deliberation and care the questions involved in the case of Antoni v. Wright were con *60 sidered, and the futility of again considering those questions, except to reaffirm and adopt the principles of that case, so far as they apply to the case before us.
With respect to the argument made in that case, as it was pressed in this case, that fines and other revenues were dedicated to the school fund, and therefore cannot be paid in coupons, Judge Anderson, in his opinion (22 Gratt. p. 874), says: * * * “It is said that those provisions of the constitution which set apart certain funds and a certain proportion of the tax for the public schools would be defeated by this legislation. It would s.eem to be a sufficient reply to say, that if it were impracticable to raise a sufficient amount of revenue for both purposes, the latter did not impose an obligation on the legislature paramount to the obligation to provide for the payment of the interest on the public debt. That was an obligation antecedent and paramount to the constitution itself, and could not be repudiated by the constitution if it had so provided. But it is not repudiated nor ignored; but the obligation is clearly recognized by sections 7, 8, 19 and 20, of Article 10, at least to pay Virginia’s proportion. And. furthermore, this being an obligation of debt, and not eleemosynary in its character, as are the other provisions referred to, and however desirable and important it may be that they should be carried out, I hesitate not to say this is of higher obligation. But there need be no clashing of duties here. *It is only required that the legislature should levy a tax sufficient for both objects; a duty imposed on it by the constitution. It has not been the practice to set apart in the public treasury the identical money received for the public schools, nor is it required by the constitution nor the acts of assembly. And the legislature has discharged its constitutional obligation when it has set apart the required amount for that purpose.”
These views, expressed both upon the first hearing and the rehearing of the case of Antoni v. Wright, are applicable to the case before us, and must govern our decision in this case.
Much has been said in the case before us about the sacredness of the school fund, and the paramount obligation of the state to educate the people. This is a great and high obligation, and no doubt will be faithfully and firmly met by the legislation. But however great and high this obligation, it cannot and ought not to be met at the sacrifice of other obligations equally sacred, and other duties' equally high and binding. A .state, like an individual, must be-just before it is generous. No honest man can or will abstract from his creditors what is justly • due them, in order to give it to his children. No state, in order to educate its citizens, ought to withhold from its just creditors, that which has been pledged, by its honor and plighted faith, to the payment of its just debts. Both obligations must and will be met. The people must be educated, but they must not be educated at the price of repudiation and dishonor. Better would be ignorance than enlightenment purchased at such a price.
In conclusion, I will repeat here the utterance of the unanimous voice of this court in the Homestead Cases, 22 Gratt. 301, which declared that “no state and no people can have any real and enduring prosperity, except where public faith and private faith are guarded by laws wisely administered and faithfully executed. The inviolability *of contracts, public and private, is the foundation of all social progress, and the corner stone of all the forms of civilized society, where an .enlightened system of jurisprudence prevails. Under our system of government it has been wisely placed under the protection of the constitution of the United States, and there it rests secure against all invasion.”
It only remains for me to say that the petitioner has the right, under the law, to discharge the fine imposed upon him by the hustings court, with a coupon of a bond of the state, which the state has agreed to receive in payment of “all taxes, debts, dues and demands due the state,” and that he must be discharged from further custody.