ANDERSON, J.
By the act of the general assembly of Virginia, to provide a plan of settlement of the public debt, approved March 28, 1879. it was enacted § 1, “That to provide for funding the debt of the State, the governor is hereby authorized to create bonds of the state, registered and coupon, dated the 1st day of January, 1879, the principal payable forty years thereafter, bearing interest at the rate of three per cent, per annum for ten years, and at the rate of four per centum per annum for twenty years, and at the rate of five per centum per annum for ten years, payable in the cities of Richmond, New York or London, as hereinafter provided, on the 1st days of July, and January of each year, until the principal is redeemed.” “The coupons on said bonds shall be receivable at and after maturity for all taxes, debts, dues and demands due the State, and this shall be expressed on their face. The holder of any registered bond shall be entitled to receive from the treasurer of the State a certificate for any interest thereon, due and unpaid, and such certificate shall be receivable for all taxes, dues and demands due the State, and this shall be expressed on the face of the registered bonds, and on the face of such certificate. *A11 obligations created under this act shall be forever exempt from all taxation, direct or indirect by the State or by any county or corporation therein, and this shall be expressed on the face of the bonds.” “The bonds hereby authorized shall be issued only in exchange for the outstanding debt of the State, as hereinafter provided.” Bonds were issued under this act and in conformity with its requirements. .
The auditor in his answer to plaintiff’s petition, admits that the said William Williamson is indebted to the State of Virginia for taxes for the year 1878, as follows: for capitation tax, the sum of $i, and for tax on property, the sum of $5.40, amounting with interest to $7.13 as shown by the tax bill filed with the petition, and that the said petitioner was returned delinquent for the nonpayment of said taxes, on the — day of-,18-78. And he also admits that the said William Williamson tendered to him as auditor aforesaid, on the 30th day of April. 1880, six dollars in coupons past due, taken from bonds issued under the act of 38th March, 1879, aforesaid, and $1.13 in money, in full payment of the taxes aforesaid, and demanded of him a receipt for the same; and that he refused to receive and receipt for the said coupons and money in full discharge of said taxes. And he assigns the following reasons, for his refusal:
“First. Because, under the law of the-State, the bonds from which said coupons were taken are liable to taxation under the laws and Constitution of the State, and this respondent is required to deduct the amount of said tax from said coupons, when received by him, which tax the aforesaid petitioner refused to pay or allow to be deducted from said coupons.
“Secondly. Because the Constitution of the State and the laws of the Stale, dedicate the aforesaid capitation tax of $1, and one-fifth of the properly tax *aforesaid, amounting to $1.08, to public schools, and must be collected in money; otherwise,, the provision of the Constitution respecting the school fund will be defeated.”
In support of his first reason, he relies on § 1, Art. X. of the Virginia Constitution; which is in the following words: “Taxation, except as hereinafter provided, whether imposed by the State, county or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribedr by law. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of equal value.”
The right to exempt from taxation is a right which is incident to the legislative prerogative. It is essential to the welfare of the State that the power of exemption should be vested in the government, and it is as inherent in the legislative department as the power of taxation, and may be exercised by the legislature at its discretion, except where it is clearly forbidden by the organic law. Judge Cooley, a distinguished jurist, and one of the soundest, and most eminent writers on constitutional limitations, and other branches of the law, says, “The general right to make exemptions, is involved in the right to apportion taxes, and must be understood to exist wherever it is not forbidden,” and cites numerous authorities in support of the doctrine.
And the same doctrine was held by this court, in the City of Richmond v. The Richmond & Danville Railroad Company, 31 Gratt. 604, with even greater strength of expression. Judge Staples, delivering the opinion of the court, said, “The power of exemption, as well as the power of taxation, is one of the essential elements of sovereignty. The right of the legislature to surrender *the power of taxation in specific cases, has been the subject of one of the ablest and most exhaustive judicial discussions ever known in the supreme court of the United States, and is now regarded as established upon the most sol:_d foundations of public policy and expediency.”
Is it forbidden by the above clause in the Virginia Constitution? In State v. North, *434 27 Mo. R. 464, it was held “that the provision in the Constitution of that State, which declares that all property subject to taxation shall be taxed in proportion to its value (substantially the same that is contained in the clause of the Virginia Constitution above cited), does not require that all property in the State shall be taxed; but that when any species of property is selected for taxation, it shall be taxed in proportion to its value.” And such we think is the meaning of the clause in the Virginia Constitution above cited. It was not intended to require the legislature to tax all the property in the State, and forbid its exercising its inherent power, when necessary for the public interest, and promotive of a sound public policy, to exempt certain property from taxation, but only to prescribe a rule by which the legislature should be guided, in apportioning taxation, that all property taxed should be taxed in« proportion to its value. That it does not mean to take from the legislature its important inherent power of exercising a discretion, when in, jits wisdom it may be deemed beneficial to the public, of exempting certain property from taxation, is more apparent when read in connection with the first clause in the sentence, which declares that taxation “shall be equal and uniform;” and then follows the clause in question, separated from it only by a comma, “and all property” not only personal property, or only real property, but “all property, both real and personal, shall be taxed *in proportion to its value, to be ascertained as prescribed by law. Ño one species of property from which á tax may be collected shall be.taxed higher than any other species of property of equal value.” ■ Giving to the language of this section its proper signification, and to each member of the sentence, and to each sentence, their just influence and bearing in conveying the meaning of the whole, it was the intention to require that taxation should be on the ad valorem principle, and that it should be equal and uniform; and it was no purpose of the framers^ of the Constitution, by this section, to restrict the legislature in the selection of the subjects of taxation, or to divest it of an important element of sovereignty, by an inflexible inhibition of exempting, in any case, property from taxation. The same rule of taxation prescribed for the State, is by this section prescribed for county or corporate bodies. City councils, for the promotion of the growth and welfare of the city, regard it as important to introduce certain manufacturing, or other industrial enterprises, within the limits of the city; and to encor«-age their introduction, stipulate on behalf of the city, that the property of those who engage in the enterprise within the limits of the city shall not be liable to taxation for a series of years. Would such an exemption, whilst it tends to increase the sources of revenue to the State, and to build up our cities, and to advance the prosperity of the rural districts by furnishing them marts for the productions of the soil, be forbidden by the Constitution? Again, for the growth and prosperity of our cities, and the extention of their trade and commerce, capital is required, and to obtain it, it is necessary to issue their bonds, and offer them in the markets, and in order to increase the value of their bonds, and render them more is forbidden by this section of *the . Constitution, to make, by a city ordinance,. such bonds exempt from municipal taxation?
The Constitution of 1850 contains the same provision, except as to county and corporate bodies, and other matters, which do not affect this question. The language is: “Taxation shall be equal and uniform throughout the Commonwealth, and all property other than slaves, shalí be taxed in proportion to its value, which shall be ascertained in such manner as may be prescribed by law.”
Under that Constitution exemptions of property from taxation were frequently made, and I am not aware that the constitutionality of those exemptions have ever been even questioned, and' they were sustained by judicial construction before that provision of the Constitution of 1850 was copied into the present Constitution of the State, and must be held to have been adopted by the farmers of the present Constitu-' tion, as it had been understood by the unquestioned legislative construction and action, and the usage of the country, and by judicial construction, before it was engrafted into the present Constitution. The legislature by the act of-, 1856, exempted the property of the Alexandria and Orange railroad company in the city of Alexandria from taxation, and in Alexandria & Orange R. R. Co. v. City of Alexandria, 17 Gratt. 176, this court held, that distinguished jurist Judge Joynes delivering the opinion, that whilst the property of the railroad company was exempt from taxation by the State, it was not exempt from taxation by the city corporation, the court construing the exemption by the act of the general assembly, as limited to taxation by the State. Our conclusion is that” the inherent power of the legislature, which is an important element of sovereignty, to exempt property from taxation, when in the wise discretion of the legislature such *exemption is deemed to be for the benefit of the state, is not taken away. or its exercise forbidden by the section of the Constitution under consideration.
Nor is it taken away or forbidden by § 3 of the same article of the Constitution. That article does not forbid, but authorizes exemptions by the legislature in certain specified cases, without forbidding it in others. The language is, “The legislature may exempt all property used exclusively for state, county, municipal, benevolent and charitable purposes.” If it had intended to forbid its exempting other property, it would have been easy to add the words, “but no other;” and we think if its purpose had been to deprive the legislature of a power, the exercise of which in cases that might arise, might be so beneficial to the State, and *435 the inhibition of which might be so hurtful, the above words, or their equivalent, would have been added.
It was contended by the plaintiff, that the exemption of the State bonds in this case from taxation, as those bonds were issued by the slate, the principal payable in forty years, j bearing interest for ten years at the rate I three per cent, for twenty years, at the rate | of four per cent, interest, and for the remain- j ing ten years at five per cent interest, in exchange for six per cent, bonds of the State [ then outstanding which would be a saving of | millions of dollars to the State, was exclu- I sively for the benefit of the State, and is | therefore within the express authority given J by this third section to exempt. Whilst that may be so, and there is much reason j for it. the court deems it unnecessary to put I it on that ground. The Constitution nowhere, 1 believe, expressly confers on the j legislature the power of taxation, because j the power is inherent in the legislature, and is not dependent on any express power from the Constitution. In like manner the general power ofexemptingproperty from taxation, is inherent in the legislature, ♦being incident to the power, may be exercised without any express power from the Constitution, if not forbidden. Therefore the giving power to the legislature, in certain cases, to exempt from taxation, cannot take from it its inherent power of exemption in other cases, which is not forbidden by the Constitution.
Tn this case the exemption is of a tax on the bonds of the State, which were issued under a contract with its creditors, upon &n adjustment of an antecedent debt, by which the State is remitted one-half the interest accruing for ten years, one-third for twenty years, and one-fifth for ten years, in consideration of which the State agreed, that the bonds which she issued, with that abatement of interest, should be non-taxable.
The exemption is by virtue of a contract i made by the State wiih her creditors, which I was deemed by the legislature to be very | beneficial to the State. Whatever difference of opinion might exist with regard to the general principles already enunciated, and [ we think there can hardly be any. it would j seem to be plainly competent for the legislature to have made such a contract with i (he creditors of the State, they voluntarily I assenting thereto, for the adjustment of the j liabilities of the State, and reducing them ' within the limit of its ability to pay. I
But there is no law which imposes a tax on those bonds. On the contrary, they are expressly exempted by law from taxation. ¡ But if they were not exempted, there is no law imposing a tax on them, and it would seem to follow, that the auditor had no authority to collect a tax upon them from the holder of the coupons, unless it is competent for a mere ministerial officer, not only to disobey the law, but to make law, and levy taxes when the legislature has imposed no tax; a proposition which hardly one would venture to make.
_ *The court is therefore of opinion. that the provision in the act of March 28, 1879, which exempted the State bonds from taxation, which were issued by authority of that act, was not in excess of the power and authority of the legislature, and is therefore not unconstitutional, and that there was no law imposing the tax, which the respondent required the plaintiff to deduct from his coupons, and consequently that respondent’s first reason for refusing the coupons and money in payment of his State taxes is unsustained and untenable,
With regard to the second reason of respondent for his said refusal, the court is of opinion, that all the questions raised thereby have been repeadly decided by this court, and that his refusal to receive the coupons in question, upon that ground, was in conflict with, and in disregard of the decisions of the highest judicial tribunal of the State, which is clothed with power by the Constitution of the State, under which he professes to have acted, to interpret the Constitution, and to decide questions arising under it, and whose decisions are final, and binding upon the people of the Stale, and all the departments of the State government, and its ministerial officers. These questions were raised, argued and decided in the well considered case of Antoni v. Wright, sheriff, 22 Gratt. 833, both on the first hearing and on the motion for rehearing. It is true, I believe, the coupons in those cases were not tendered in payment of the capitation tax. But is was argued that the law was unconstitutional, because by its terms, it made the coupons receivable in payment of capitation taxes. But the court decided that it was not unconstitutional on that ground. The same question is raised by respondent in this case, and he justifies his refusal to obey the law, upon the ground that one dollar was a capitation *tax, which he could not receive coupons in payment of. Yet there was actually tendered in money $1.12. which exceeded the amount of the capitation tax. But in the case of Antoni v. Wright, the coupons were tendered in payment of a property tax, and it was contended that one-fifth of the property tax was dedicated to the support of the public schools, ánd that the requirement that coupons should be receivable in payment of so much of the property tax, as was dedicated to the public schools, was unconstitutional. So that question was directly in issue, and it was decided by this court, that the coupons were receivable in payment of the property lax. and that the act of 1871 was not unconstitutional on that ground. The respondent in this case raises precisely the same question, and justifies his refusal to receive the coupons on the ground that the act of the 28th March, 1879, was unconstitutional, in making the coupons receivable in payment of such taxes, in which he virtually undertakes to reverse the decision of the court, to whom the power and duty is assigned by the Constitution, to adjudge the case, and finally to settle and determine, whether the law is constitutional or not.
*436 Some years after the decision of Antoni v. Wright reference was made to that case, in the case of Wise Brothers and the case of Maury, 34 Gratt. 169, when the correctness of that decision was recognized. Again, in the recent case of Clarke v. Tyler, sergeant, 30 Gratt. 134, the same constitutional question was again raised, as to the receivability of coupons in payment of fines, which it was argued were appropriated by the Constitution to the public free schools, and that the act of 1871, in making coupons receivable in payment of fines, was a violation of the Constitution; and this court again reaffirmed its decision in Antoni v. Wright, both upon the hearing, and on the motion for a rehearing. * We are of opinion therefore, that the question raised by respondent’s second reason, is no longer an open question. It is a res adjudicata, and there is nothing in the answer of the respondent, or in the argument of his counsel, that has created in the minds of the court, even a doubt, as to the correctness, of its former repeated and well considered decisions of the same questions which respondent has thought proper to raise in his second reason, in justification of his refusal to obey the law, and to receive the_ coupons, and the money tendered by plaintiff in payment of his taxes.
I deem it unnecessary to reiterate the reasons which sustain us in this decision, they are fully set out in the opinions delivered on the trial of Antoni v. Wright, and on the motion for a- hearing, to which Í beg to refer; and also to the opinion of Judge Christian, and also to my opinion in Clarke v. Tyler, sergeant, supra. Those opinions fully vindicate the decisions of this court in Antoni v. Wright, sheriff, and were concurred in by a majority of all the judges elected to the court, which is necessary under § 3, Art. VI of the Constitution, “to declare any law null and void, by reason of its repugnance to the Federal Constitution, or the Constitution of this State;” and consequently these decisions, by three out of the five judges elected to the court, do establish the constitutionality of the act which makes coupons for the interest accruing on the bonds of the State, at and after their maturity, receivable in payment of taxes, debts, dues and demands due the State, and only one of the judges out of the fire elected to the court, holding as conscientiously, as his brethren held to the contrary, that the said act in that respect, is repugnant to the Constitution of the State, cannot declare said act to be null and void by reason thereof. And a majority of all the judges elected to the court, *deciding that the act of 7th of March, 1873, which virtually prohibited the officers who had charge of the collection of the revenues of the State, to receive coupons in payment of taxes, was null and void by reason of its repugnance to the Federal Constitution, and the Constitution of the State, notwithstanding the opinion of only one of the five judges elected to the court, to the contrary, is a constitutional avoidance and annulment of said act, so far as it was so declared to be unconstitutional, null and void. I beg to refer to my opinion in Clarke v. Tyler, sergeant, which was concurred in by Judges Christian and Burks, though that does not appear from the report of the case, for the reasons, which need not be reiterated here, which I think fully sustains the decision of the court, especially upon the question again raised by respondent, in this case, and shows the fallacy of all the objections urged to the constitutionality of the law upon that ground, and which fortifies the reasoning of Judge Christian, in his able opinion in the same case, attaining the same result, to which I beg also to refer.
Upon the whole the court is of opinion that the rule nisi must be made absolute, and that a mandamus be issued against the said John E. Massey, auditor, commanding him to receive the coupons, and the money tendered by William Williamson, in payment of his taxes' hereinbefore mentioned, and that upon receipt of said coupons and money, he execute to him a receipt in full discharge of said taxes.