26 U.S. 94
 1 Pet. 94
 7 L.Ed. 67
 PHILIP HICKIE AND OTHERS, HEIRS AND LEGAL
REPRESENTATIVES OF JAMES MATHER, DECEASED, APPELLANTS,
v.
ALEXANDER B. STARKE AND OTHERS, HEIRS AND LEGAL
REPRESENTATIVES OF ROBERT STARKE, DECEASED, APPELLEES.
 January Term, 1828
 
 IN the Supreme Court of the county of Adams, in the state of Mississippi, the appellees filed a bill in chancery against the appellants; which, according to the laws of the state, was transferred to the Supreme Court, where judgment was given for the complainants.
 The purpose of the bill was to obtain a conveyance of a tract of land, containing 2000 acres; for which Robert Starke, in 1791, under whom the complainants claimed, obtained an order of survey from the Governor-General of Louisiana, which order was executed by the deputy surveyor, and of which land he afterwards took possession, and cultivated for years. Subsequently, Robert Starke being willing to exchange this body of lands for another, proposed the same to the governor of Louisiana. The bill alleged, that, from some personal hostility towards him, an offer of the land so held by him was made to James Mather, the ancestor of the appellants, the defendants in the bill; and a grant of the land was made in 1794, to James Mather, by the governor of Louisiana, who thereupon entered, and cultivated part of the tract.
 It was admitted, that all the forms required by the established laws and customs of Louisiana, while under the Spanish government, by which a full and complete title to land was acquired, had not been conformed to, by Robert Starke, or his heirs, the appellees; and that the title of James Mather was, in all respects, full and complete, as a legal title, under those laws. The appellees, in their bill, claimed to have the land conveyed to them, as the title of the appellants had been acquired by collusion with the governor of Louisiana; and the Robert Starke had been forcibly, and against his will, dispossessed of the land. Under the authority of the Supreme Court of Mississippi, a feigned issue was tried, to determine 'whether the ancestor of the complainants ever made a voluntary abandonment of his right to the premises in question, free from any undue influence on the part of the Spanish government or its officers.'
 This issue was found, by the verdict of a jury, in favour of the complainants; and the same having been certified to the Supreme Court, a decree was made in favour of the complainants, the appellees. The appellants then filed their petition for a writ of error, to the Supreme Court of the United States; suggesting, that the title of James Mather arose 'under the articles of agreement and cession,' between the United States and the state of Georgia, and that by the decree of the Supreme Court, that title has been overruled. The argument before the Court, was principally confined to two questions; upon the determination of which, the jurisdiction of the Court in the case, depended.——
 1. Whether the construction and effect of the articles of agreement and cession, between the United States and the state of Georgia, were presented for the consideration of the Supreme Court of Louisiana, in the investigation of this case; so that, by the decree of the Court, the title claimed by the appellants, under the articles of agreement, was brought into question?
 2. Whether the appellants' title, being a full and complete Spanish grant, was confirmed by 'the articles of agreement and cession,' and was in itself a valid and indefeisible grant of the land?
 The only facts connected with the discussion of the case before this Court, were those which related to the actual possession of the land by James Mather, and the period of the same.
 They are sufficiently noticed in the decision of the Court.
 Mr. Livingston, for the appellants.——
 The question of jurisdiction rests upon the fact, whether the construction of 'the articles of agreement and cession,' was before the Court giving the decree for the appellees.
 The articles provide, that all complete grants made by the Spanish or British governments, prior to the acquisition of Louisiana, by the United States; and all incomplete grants made by the state of Georgia, before 'the articles,' shall be confirmed by the United States.
 The complainants' bill admits, that the appellants, the defendants in the Supreme Court of Louisiana, had a complete grant from the Spanish government of Louisiana, and thus the title of the appellants was brought before the Court; and this title was made valid, by the 'articles of agreement and cession.' The evidence in the case also fully establishes the Spanish title of the appellants, and this is shown in every part of the record; the omission of the appellants to plead this title, thus acknowledged, or thus proved, ought not to defeat it. (7 Wheat. 164. 201.) The petition for a writ of error to the Judge of the Supreme Court of Louisiana, states, that the title of the appellants, is claimed under the 'articles of agreement and cession;' and as he signs the allowance of the writ, the fact of the title having been before him, is sufficiently shown. As to the non-compliance, by the appellants, with the provisions of the Act of Congress of 3d March 1810, which provide for the registering of claims, under the Spanish and British government, it was said——
 1. Congress cannot pass a law to affect a title, which has been declared complete by the 'articles of agreement and cession.'
 2. If that law is valid, the fact of forfeiture by non-registration, must be ascertained by some proceeding, before the title can be considered as lost.
 3. The provisions of the law refer to British grants, which were of a particular nature, and which were required to be exhibited to, and registered with the commissioners; and not to Spanish grants.
 Both parties to the case, claim under a law of the United States; and, by the 25th section of the Judiciary Law, the jurisdiction of this Court extends to all such cases. As to jurisdiction, there was cited, 4 Cranch, 482. 4 Wheat. 348. 5 Cranch, 348.
 Mr. M'Duffie and Mr. Coxe, for the appellees.——
 The Court will not entertain jurisdiction of this case, but to a limited extent, if it shall consent to assume any jurisdiction over it; as the whole of the facts, upon which the equitable title of the appellees rested, having been peculiarly within the jurisdiction of the Supreme Court of Louisiana, sitting in chancery, and the decision of that Court, having affirmed these facts; they will remain unaffected, by any proceedings here. 1 Wheat. 352. 2 Ibid. 363. 6 Ibid. 379. 390. 7 Ibid. 206.
 In the Chancery Court of Mississippi, 'the articles of agreement and cession' were not noticed; and the decree was exclusively upon the equitable title of the complainants in the bill. This being the fact, it cannot be alleged here, that the construction of these articles was brought into question.
 In order to maintain the jurisdiction of this Court, it must be shown, that the title under 'the articles, &c.,' was decided upon by the Court.
 2. 'The articles of agreement and cession,' look forward to the performance of certain acts, under the laws of the United States. The 5th section of the Act of Congress of 1803, requires, that titles claimed under Spanish grants, shall be exhibited to a Board of Commissioners, to be appointed for the purpose of examining and registering the same; and, until it shall be shown, that the appellants have a grant under the Spanish government, and that the same was exhibited and registered according to the provisions of the law, they are precluded from claiming title under 'the articles of agreement and cession.' The articles of agreement were not intended to extend further than to adjust the claims of the United States, and the state of Georgia, to the lands; and not to settle those of individuals. Henderson vs. Poindexter, 12 Wheat. 543. Congress had no power to legislate, so as to deprive any one of an equitable title, and consequently the articles of agreement could not take away the appellees' title, existing before the cession.
 3. The appellants are bound to show a good and perfect title, under the agreement with Georgia, and the laws of the United States; and that they were in possession of the property. The grant from Spain, must have been legally executed, according to the Spanish laws; and, under these laws, the prior equitable title of the appellees, would have been regarded and enforced. 7 Partidas, 16th, 17th title. The operation of 'the articles,' cannot be such, as will give validity to a title originating in fraud or violence; nor will this Court say, that a title originating thus shall be sustained; or that the decision of an inferior Court, upon the facts of fraud and violence, was erroneous. Cited 7 Wheat. 206. 6 Ibid. 379.
 The Supreme Court of Mississippi did not decide, that the title held by the appellees, was invalid; but that it was a legal title, which could not, in conscience, be held by the appellants; and that they should convey the same to the complainants, the appellees. A Court of Chancery does not decide on the title to land, directly, but only operates on the same, collaterally.
 Mr. Chief Justice MARSHALL delivered the opinion of the Court.
 
 
 1
 This is a writ of error, to a decree pronounced in the Court of the last resort, in the state of Mississippi, directing the plaintiffs in error, to convey to the defendants, a certain tract of land, in the said proceedings mentioned. The plaintiffs in error allege, that their title was secured by the compact entered into between the United States and Georgia, for the cessionof the country in which the land lies; and that this decree is in violation of that compact. The defendants insist, that the compact between the United States and Georgia, was not called into question; and that the 25th section of the judicial act, does not give this Court jurisdiction of the case.
 
 
 2
 In the construction of that section, the Court has never required that the treaty, or Act of Congress, under which the party claims, who brings the final judgment of a state Court into review before this Court, should have been pleaded specially, or spread on the record. But it has always been deemed essential to the exercise of jurisdiction in such a case, that the record should show a complete title under the treaty or Act of Congress, and that the judgment of the Court is in violation of that treaty or Act. The condition in the Cession Act, on which the plaintiffs in error rely, is in these words:—'That all persons, who, on the 27th day of October 1795, were actual settlers within the territory thus ceded, shall be confirmed in all the grants, legally and fully executed prior to that day, by the former British government of West Florida, or by the government of Spain.'
 
 
 3
 The plaintiffs produce a grant, legally and fully executed; but to bring the case under the treaty, they must also prove, that the ancestor or person under whom they claim, was an actual settler, on the 27th October 1795. The answer asserts, that the warrant of survey issued on the 7th day of February 1793, and the survey made on the 20th July, in the same year, when possession was taken; and that the patent issued on the 3d April 1794. James Williams deposes, that about the 3d December 1795, he took possession of the tract of land in dispute, as overseer for James Mather the patentee, and understood from him, that he had gone to Natchez some time before, to apply for land in the part of the country where the tract in controversy lies. This is the testimony furnished by the record, to prove that James Mather, the grantee, was an actual settler, according to the requisition of the Cession Act of Georgia. In Henderson vs. Poindexter, 12 Wheat. 530, the term 'actual settler,' seems to have been understood as synonymous with the resident of the country. That case, however, did not require that the precise meaning of the term should be fixed, and the Court is disposed to think, that a settlement made on the land by another person, who cultivated it for the proprietor, would be sufficient; though the proprietor should not reside in person on the estate, or within the territory. Had the settlement proved by Williams, been made at the day required by the Cession Act, it would, we think, have satisfied the requisition of that Act, and entitled the plaintiffs in error to the benefit of the condition. But it was not made until the 3d of December 1795. We think then, that the plaintiffs in error have failed to prove, that the person under whom they claim, was an actual settler on the 27th day of October 1795; and that the Court has no jurisdiction of the cause.
 
 
 4
 The writ of error dismissed, it not appearing that this Court has jurisdiction of the cause.