# McCULLOUGH *v.* VIRGINIA.

## ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 3. Argued February 21, 23, 1898. — Decided December 5, 1898.

On the 29th of May, 1892, the plaintiff below (plaintiff in error here) filed a bill in the Circuit Court of the city of Norfolk, Virginia, to establish the genuineness of certain coupons tendered by him in payment of taxes, and obtained a judgment there in his favor. When the suit was commenced, the highest court of Virginia had often decided against the right to require the State to accept such coupons in payment of taxes. This court, on the other hand, in a series of decisions reaching from 1880 to 1889, had been uniform and positive in favor of the validity of the act authorizing the issue of such bonds, and of the liability of the State to accept the coupons in payment of taxes. In the present case the Supreme Court of Appeals of Virginia dismissed the plaintiff's petition, on appeal, and awarded costs to the Commonwealth, on the ground that the coupon provision of the act of 1871 was void. In the previous cases there had been no direct decision by the state court that such provision was entirely void, although the intimation was clear that such was the opinion of the judges then composing the court. It was contended by the State that this court has no jurisdiction of this case, for the reason that the state Court of Appeals does not consider, in its opinion, the subsequent legislation of the State, passed with a view to impair the act of 1871, but limits itself to the consideration of that act, which it adjudges to be void, and also that the repeal of the act of 1882, after the judgment in the trial court below, amounts to a withdrawal of the consent of the State to be sued, and is fatal to the maintenance of this action. *Held:*

(1) That the lawful owner of such coupons has the right to tender the same after maturity in payment of taxes, debts and demands due the State;

(2) That this court has the right to inquire and judge for itself with regard to the making of the alleged contract with the holder of the coupons without regard to the views or decisions of the state court in relation thereto;

(3) That the owner's right to pay taxes in coupons is not affected by the consideration that some taxes, other than the ones now in question, were, when the act of 1871 was passed, required to be paid in money;

(4) That while it is true that the state court placed its decision on the ground that the act of 1871 was void, in so far as it related to

the coupon contract, the judgment also gave effect to subsequent statutes; and this court has jurisdiction of the case;

(5) That the rights acquired by the plaintiff under the judgment were not lost or disturbed by the repeal, after judgment, of the act of 1882.

ON March 30, 1871, the general assembly of the State of Virginia passed an act for the refunding of the public debt. Virginia Acts Assembly, 1870–71, p. 378. See also act of March 28, 1879; Virginia Acts Assembly, 1878–79, p. 264. This act, which authorized the issue of new coupon bonds for two thirds of the old bonds, leaving the other third as the basis of an equitable claim upon the State of West Virginia, contained this provision: "The coupons shall be payable semiannually, and be receivable at and after maturity for all taxes, debts, dues and demands due the State, which shall be so expressed on their face." Under this act a large amount of the outstanding debt of the State was refunded. This provision gave value to the bonds as affording an easy method of securing payment of the interest. This refunding scheme, however, did not prove satisfactory to the people of the State, and since then there has been repeated legislation tending to destroy or impair the right granted by this provision. Among other statutes may be noticed the following: The act of March 7, 1872, c. 148, Acts of Assembly, 1871–72, p. 141, providing that it should not be "lawful for the officers charged with the collection of taxes or other demands of the State, due now or that shall hereafter become due, to receive in payment thereof anything else than gold or silver coin, United States Treasury notes, or notes of the national banks of the United States." That of March 25, 1873, c. 231, Acts of Assembly, 1872–73, p. 207, imposing a tax of fifty cents on the hundred dollars market value of bonds, and directing that such amount be deducted from coupons tendered in payment of taxes or dues.

At the time the act of 1871 was passed and the new bonds and coupons were issued, the Court of Appeals of the State had jurisdiction to grant a mandamus in any action where the writ would lie according to the principles of the common law, and in

*Antoni* v. *Wright*, 22 Gratt. 833, it was held by that court that mandamus was the proper remedy to compel the collector to accept coupons offered in payment of taxes.   On January 14, 1882, the assembly passed an act, Acts 1881–82, c. 7, p. 10, which, in effect, provided that a taxpayer seeking to use coupons in payment of his taxes should pay the taxes in money at the time of tendering the coupons, and thereafter bring a suit to establish the genuineness of the coupons, which, if decided in his favor, enabled him to obtain from the treasurer a return of the money paid.   The various features of this act are specifically pointed out in *Antoni* v. *Greenhow*, 107 U. S. 769.   At the same session, and on January 26, 1882, Acts 1881–82, c. 41, p. 37, the assembly passed a further act declaring that the tax collectors should receive in payment of taxes and other dues "gold, silver, United States Treasury notes, national bank currency and nothing else," with a provision for suit by one claiming that such exaction was illegal. The act contained this proviso : "There shall be no other remedy in any case of the collection of revenue, or the attempt to collect revenue illegally, or the attempt to collect revenue in funds only receivable by said officers under this law, the same being other and different funds than the taxpayer may tender or claim the right to pay, than such as are herein provided ; and no writ for the prevention of any revenue claim, or to hinder or delay the collection of the same, shall in anywise issue, either injunction, supersedeas, mandamus, prohibition or any other writ or process whatever; but in all cases, if for any reason any person shall claim that the revenue so collected of him was wrongfully or illegally collected, the remedy for such person shall be as above provided,. and in no other manner."

At the same session, on February 14, 1882, a new funding bill was passed containing a proposition to the bondholders, act of April 7, 1882, c. 84, Acts 1881–82, p. 88; and again at the same session, on April 7, 1882, an act was passed amending the Code of Virginia in respect to mandamus, which provided : "That no writ of mandamus, prohibition or any other summary process whatever, shall issue in any case of the collec-

tion, or attempt to collect revenue, or to compel the collecting officers to receive anything in payment of taxes other than as provided in chapter forty-one, Acts of Assembly, approved January twenty-six, eighteen hundred and eighty-two, or in any case arising out of the collection of revenue in which the applicant for the writ or process has any other remedy adequate for the protection and enforcement of his individual right, claim and demand, if just." Acts 1881–82, p. 342.

On March 15, 1884, the general assembly passed a general act in reference to the assessment of taxes on persons, property and incomes, Acts 1883–84, c. 450, p. 561, the one hundred and thirteenth section (p. 603) of which required that all school taxes should be paid "only in lawful money of the United States."

On January 21, 1886, Acts 1885–86, c. 46, p. 37, an act was passed providing that in a suit in respect to coupons tendered in payment of taxes, no expert testimony should be receivable, and that the bonds from which the coupons were cut should be produced, if demanded, as a condition precedent to the right of recovery.

Section 399 of "The Code of Virginia," which was a revision and reënactment of the general statutes of the State, adopted May 16, 1887, reads: "It shall not be lawful for any officer charged with the collection of taxes, debts or other demands of the State to receive in payment thereof anything else than gold or silver coin, United States Treasury notes or national bank notes."

On May 29, 1892, the plaintiff in error filed his petition in the Circuit Court of the city of Norfolk to establish the genuineness of certain coupons tendered in payment of taxes. The proceeding was had under the act of 1882, and no question is made of a full compliance with the terms of that statute. Judgment was rendered in his favor by the Circuit Court of the city of Norfolk, which judgment was, on March 23, 1894, reversed by the Supreme Court of Appeals of the State, 90 Virginia, 597, and a judgment entered in favor of the Commonwealth, dismissing the petition of the plaintiff and award-

ing to the Commonwealth costs.   On June 13, 1894, a writ of error was allowed, and the case brought to this court.

*Mr. Richard L. Maury* and *Mr. William A. Maury* for plaintiff in error.   *Mr. Matthew F. Maury* was on their brief.

*Mr. A. J. Montague* and *Mr. Henry R. Pollard* for defendant in error.   *Mr. R. Taylor Scott*, attorney general of the State of Virginia, filed a brief for same.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Perhaps no litigation has been more severely contested or has presented more intricate and troublesome questions than that which has arisen under the coupon legislation of Virginia.   That legislation has been prolific of many cases, both in the state and Federal courts, not a few of which finally came to this court.   *Hartman* v. *Greenhow*, 102 U. S. 672; *Antoni* v. *Greenhow*, 107 U. S. 769; *Virginia Coupon cases*, 114 U. S. 269; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Carter* v. *Greenhow*, 114 U. S. 317, 322; *Moore* v. *Greenhow*, 114 U. S. 338, 340; *Marye* v. *Parsons*, 114 U. S. 325; *Barry* v. *Edmunds*, 116 U. S. 550; *Chaffin* v. *Taylor*, 116 U. S. 567, 571; *Royall* v. *Virginia*, 116 U. S. 572; *Royall* v. *Virginia*, 121 U. S. 102; *Sands* v. *Edmunds*, 116 U. S. 585; *Stewart* v. *Virginia*, 117 U. S. 612; *In re Ayers*, 123 U. S. 443; *McGahey* v. *Virginia*, 135 U. S. 662.

For the first time in the history of this litigation has any appellate court, either state or Federal, distinctly ruled that the coupon provision of the act of 1871 was void.   After the passage of the act of March 7, 1872, which in terms required all taxes to be paid in cash, the case of *Antoni* v. *Wright* came before the Court of Appeals of Virginia, 22 Gratt. 833, and on December 13, 1872, was decided.   Elaborate opinions were filed, and the court held the act of 1871 valid, and the act of 1872 void as violating the contract embraced in the coupon provision of the act of 1871.   This decision was reaffirmed in

*Wise Bros.* v. *Rogers*, 24 Gratt. 169, decided December 17, 1873; *Clark* v. *Tyler*, 30 Gratt. 134, decided April 4, 1878, and again in *Williamson* v. *Massey*, 33 Gratt. 237, decided April 29, 1880. In *Greenhow* v. *Vashon*, 81 Virginia, 336, decided January 14, 1886, the act requiring school taxes to be paid in cash was sustained, and such taxes excepted from the coupon contract on the ground of a specific command in the state constitution in force at the time of the passage of the funding act. There was no direct decision that the coupon provision was entirely void, although the intimation was clear that such was the opinion of the judges then composing the court.

In this court the decisions have been uniform and positive in favor of the validity of the act of 1871. There has been no dissonance in the declarations, from the first case, *Hartman* v. *Greenhow*, 102 U. S. 672, 679, decided at the October term, 1880, in which, referring to this act, the court said, by Mr. Justice Field, "a contract was thus consummated between the State and the holder of the new bonds, and the holders of the coupons, from the obligations of which she could not, without their consent, release herself by any subsequent legislation. She thus bound herself, not only to pay the bonds when they became due, but to receive the interest coupons from the bearer at and after their maturity, to their full amount, for any taxes or dues by him to the State. This receivability of the coupons for such taxes and dues was written on their face, and accompanied them into whatever hands they passed. It constituted their chief value, and was the main consideration offered to the holders of the old bonds to surrender them and accept new bonds for two thirds of their amount," to *McGahey* v. *Virginia*, 135 U. S. 662, 668, decided at the October term, 1889, in which Mr. Justice Bradley, delivering the unanimous opinion of the court, observed: "We have no hesitation in saying that the act of 1871 was a valid act, and that it did and does constitute a contract between the State and the holders of the bonds issued under it, and that the holders of the coupons of said bonds, whether still attached thereto or separated therefrom, are entitled, by a solemn engagement of the State, to use them in payment of state taxes and public dues.

This was determined in *Hartman* v. *Greenhow*, 102 U. S. 672, decided in January, 1881; in *Antoni* v. *Greenhow*, 107 U. S. 769, decided in March, 1883; in the *Virginia Coupon cases*, 114 U. S. 269, decided in April, 1885, and in all the cases on the subject that have come before this court for adjudication. This question, therefore, may be considered as foreclosed and no longer open for consideration. It may be laid down as undoubted law that the lawful owner of any such coupons has the right to tender the same after maturity in absolute payment of all taxes, debts, dues and demands due from him to the State."

Since the decision of the Court of Appeals of Virginia, in *Antoni* v. *Wright*, 22 Gratt. 833, that the act of 1872, providing for the payment of taxes in cash only was unconstitutional, the general assembly of Virginia has from time to time passed acts tending to embarrass the coupon holder in the exercise of the right granted by the funding act. Some of these acts appear in the statement preceding this opinion, but for a more full review of the legislation and the course of decision reference may be had to the opinion of Mr. Justice Bradley in the several cases reported under the title of *McGahey* v. *Virginia, supra*.

We are advised by the opinion of the Court of Appeals of Virginia, in 22 Gratt. 833, that the debt—two thirds of which was proposed to be refunded and most of which was, in fact, refunded—amounted to $40,000,000 of principal. These refunding bonds, amounting to many millions of dollars, have passed into the markets of the world, and have so passed accredited, not merely by the action of the General Assembly of the State of Virginia, but by the repeated decisions of her highest court, as well as of this court, for substantially a quarter of a century, to the effect that such coupon provision was constitutional and binding. Now, at the end of twenty-seven years from the passage of the act, we are asked to hold that this guarantee of value, so fortified as it has been, was never of any validity, that the decisions to that effect are of no force and that all the transactions which have been had based thereon rested upon nothing. Such a result

is so startling that it at least compels more than ordinary consideration.

We pass, therefore, to a consideration of the specific question presented in this record. First. It is insisted that the decision of the Court of Appeals was right, and that the coupon provision was void. It were a waste of time to repeat all the arguments which have been heretofore presented, and we content ourselves with reiterating that which was said by Mr. Justice Bradley, speaking for the entire court, in *McGahey* v. *Virginia*, 135 U. S. 662, 668: "This question, therefore, may be considered as foreclosed and no longer open for consideration. It may be laid down as undoubted law that the lawful owner of any such coupons has the right to tender the same after maturity in absolute payment of all taxes, debts, dues and demands due from him to the State."

Secondly. It is insisted that whatever may be our own opinions upon the case, we are to take the construction placed by the Court of Appeals of Virginia upon the act as the law of that State. While it is undoubtedly the general rule of this court to accept the construction placed by the courts of a State upon its statutes and constitution, yet one exception to this rule has always been recognized, and that in reference to the matter of contracts alleged to have been impaired. This was distinctly affirmed in *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436, 443, in which the court, speaking by Mr. Justice Wayne, gave these reasons for the exception: "It has never been denied, nor is it now, that the Supreme Court of the United States has an appellate power to revise the judgment of the Supreme Court of a State, whenever such a court shall adjudge that not to be a contract which has been alleged, in the forms of legal proceedings, by a litigant, to be one, within the meaning of that clause of the Constitution of the United States which inhibits the States from passing any law impairing the obligation of contracts. Of what use would the appellate power be to the litigant who feels himself aggrieved by some particular state legislation, if this court could not decide, independently of all adjudication by the Supreme Court of a State, whether or not the

phraseology of the instrument in controversy was expressive of a contract and within the protection of the Constitution of the United States, and that its obligation should be enforced, notwithstanding a contrary conclusion by the Supreme Court of a State? It never was intended, and cannot be sustained by any course of reasoning, that this court should, or could with fidelity to the Constitution of the United States, follow the construction of the Supreme Court of a State in such a matter, when it entertained a different opinion." The doctrine thus announced has been uniformly followed. *Bridge Proprietors* v. *Hoboken Company*, 1 Wall. 116, 145; *Wright* v. *Nagle*, 101 U. S. 791, 793; *McGahey* v. *Virginia*, 135 U. S. 664, 667, in which, in reference to this very contract, it was said: "In ordinary cases the decision of the highest court of a State with regard to the validity of one of its statutes would be binding upon this court; but where the question raised is, whether a contract has or has not been made, the obligation of which is alleged to have been impaired by legislative action, it is the prerogative of this court, under the Constitution of the United States and the acts of Congress relating to writs of error to the judgments of state courts, to inquire and judge for itself with regard to the making of such contract, whatever may be the views or decisions of the state courts in relation thereto." See also *Douglas* v. *Kentucky*, 168 U. S. 488, 501, and cases cited therein.

Thirdly. It is urged that our last decision, that in *McGahey* v. *Virginia*, *supra*, logically leads to the conclusion that the whole coupon contract was void, and that the Court of Appeals of Virginia rightly interpreted the scope of that decision when it so held. The argument of that court is that because the constitution of Virginia compels the payment of certain taxes in cash, and that therefore the coupon contract cannot be enforced as against those taxes, the whole contract must fail, the partial failure being a vice which enters into and destroys the entire contract. But the court overlooks that which was in fact decided in the eight cases reported under the title of *McGahey* v. *Virginia*, for while in two of those cases it was held that the coupon contract could not be enforced against

certain specific taxes and dues, it was in others as distinctly held that it could be enforced in respect to general taxes.

It may be well to here quote the language with which Mr. Justice Bradley concludes his general review of the prior litigation, and which in its last paragraph shows that this very matter was considered and determined (pp. 684, 685):

"Without committing ourselves to all that has been said, or even all that may have been adjudged, in the preceding cases that have come before the court on the subject, we think it clear that the following propositions have been established:

"First, that the provisions of the act of 1871 constitute a contract between the State of Virginia and the lawful holders of the bonds and coupons issued under and in pursuance of said statute;

"Second, that the various acts of the assembly of Virginia passed for the purpose of restraining the use of said coupons for the payment of taxes and other dues to the State, and imposing impediments and obstructions to that use, and to the proceedings instituted for establishing their genuineness, do in many respects materially impair the obligation of that contract, and cannot be held to be valid or binding in so far as they have that effect;

"Third, that no proceedings can be instituted by any holder of said bonds or coupons against the Commonwealth of Virginia, either directly by suit against the Commonwealth by name, or indirectly against her executive officers to control them in the exercise of their official functions as agents of the State;

"Fourth, that any lawful holder of the tax-receivable coupons of the State issued under the act of 1871 or the subsequent act of 1879, who tenders such coupons in payment of taxes, debts, dues and demands due from him to the State, and continues to hold himself ready to tender the same in payment thereof, is entitled to be free from molestation in person or goods on account of such taxes, debts, dues or demands, and may vindicate such right in all lawful modes of redress — by suit to recover his property, by suit against the officer to recover damages for taking it, by injunction to

prevent such taking where it would be attended with irremediable injury, or by a defence to a suit brought against him for his taxes or the other claims standing against him. No conclusion short of this can be legitimately drawn from the series of decisions which we have above reviewed, without wholly overruling that rendered in the coupon cases and disregarding many of the rulings in other cases, which we should be very reluctant to do. To the extent here announced we feel bound to yield to the authority of the prior decisions of this court, whatever may have been the former views of any member of the court.

"There may be exceptional cases of taxes, debts, dues and demands due to the State which cannot be brought within the operation of the rights secured to the holders of the bonds and coupons issued under the acts of 1871 and 1879. When such cases occur they will have to be disposed of according to their own circumstances and conditions."

Neither is the argument a sound one. It ignores the difference between the statute and the contract and confuses the two entirely distinct matters of construction and validity. The statute precedes the contract. Its scope and meaning must be determined before any question will arise as to the validity of the contract which it authorizes. It is elementary law that every statute is to be read in the light of the Constitution. However broad and general its language, it cannot be interpreted as extending beyond those matters which it was within the constitutional power of the legislature to reach. It is the same rule which obtains in the interpretation of any private contract between individuals. That, whatever may be its words, is always to be construed in the light of the statute; of the law then in force; of the circumstances and conditions of the parties. So, although general language was introduced into the statute of 1871, it is not to be read as reaching to matters in respect to which the legislature had no constitutional power, but only as to those matters within its control. And if there were, as it seems there were, certain special taxes and dues which under the existing provisions of the state constitution could not be affected by legislative

action, the statute is to be read as though it in terms excluded· them from its operation.

Indeed, the Court of Appeals does not follow what it calls the logic of the decision in *McGahey* v. *Virginia* to its necessary result. The scope of its argument is that if a part of the consideration be illegal, the whole contract fails. But the promise on the part of the State, written into these coupons and authorized by the act of 1871, was a promise to pay so much money and to receive such promise in satisfaction of taxes. In reference to this, the Court of Appeals, in its opinion in this case, uses this language:

"We do not assail that act as unconstitutional as an entirety. We simply hold that the coupon feature of the act, the coupon contract, which is readily separable from the rest of the act, is repugnant to sections 7 and 8 article 8 of the constitution of Virginia, and is, therefore, an illegal contract. The validity of the bonds issued under and by authority of said acts of March 30, 1871, and March 28, 1879, is not denied; nor is it denied that the bondholders are entitled to the interest on the bonds, to be collected in the ordinary way; but we do deny that it can be collected through the medium of the illegal coupon, which have been most aptly designated the 'cut worm of the treasury.'" 90 Virginia, 597–606.

Further, the authorities to which it refers make against the conclusion which it reaches. Thus, at the end of its argument, it quotes as a principal authority the following:

"The concurrent doctrine of the text books on the law of contracts is that if one of two considerations of a promise be void merely, the other will support the promise; but that if one of two considerations be unlawful the promise is void. When, however, for a legal consideration, a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful and void for the residue. Whenever the unlawful part of the contract can be separated from the rest it will be rejected and the remainder established. But this cannot be done when one of two or more considerations is unlawful, whether the promise be to do one lawful act, or two or more acts part of which are unlaw-

ful, because the whole consideration is the basis of the whole promise. The parts are inseparable. *Widoe* v. *Webb,* 20 Ohio St. 431, citing Metcalf on Contracts, 246 ; Addison on Contracts, 905 ; Chitty on Contracts, 730 ; 1 Parsons on Contracts, 456 ; 1 Parsons on Notes and Bills, 217 ; Story on Prom. Notes, section 190 ; Byles on Bills, 111 ; Chitty on Bills, 94.

" And in the same case it is said : 'Whilst a partial want or failure of consideration avoids a bill or note only *pro tanto,* illegality in respect to a part of the consideration avoids it *in toto.* The reason of this distinction is said to be founded, partly at least, on grounds of public policy, and partly on the technical notion that the security is entire and cannot be apportioned ; and it has been said with much force, that where parties have woven a web of fraud or wrong it is no part of the duty of courts of justice to unravel the threads and separate the sound from the unsound ;' citing Story on Prom. Notes and Byles on Bill, *supra,* and then adds: 'And, in general, it makes no difference as to the effect whether the illegality be at common law or by statute.' "

This decision declares that when the consideration is illegal, the promise fails; and to like effect are the other authorities cited. But in the case at bar there is no illegality in the consideration. That was furnished by the bondholder in the old bond, and that bond was the sole consideration. It is nowhere suggested that there was any vice or illegality in it; that it was not a valid obligation of the State. When the bondholder surrendered that he furnished the entire consideration for the contract, and for that he received from the State a promise. And as the Supreme Court of Ohio said in the case above cited : " When, however, for a legal consideration, a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful and void for the residue." The Court of Appeals concedes that the promise made by the State to pay the interest is valid, because made upon a good and lawful consideration. Does it not logically follow that the promise of the State is also good as to all other matters contained within it in respect

to which it might lawfully make a promise? It promised to receive the coupons " for all taxes, debts, dues and demands due the State." That promise was necessarily for each tax and debt, as well as for all taxes and debts. If it should so happen that any single tax or debt cannot, under the constitution of the State, be lawfully discharged by the receipt of the coupon, there is no difficulty in separating that part of the contract from the balance. And as said by the Supreme Court of Ohio: " Whenever the unlawful part of the contract can be separated from the rest, it will be rejected and the remainder established."

To like effect are the decisions of this court. In *United States* v. *Bradley*, 10 Pet. 343, suit was brought on a paymaster's bond, and it was claimed that as some of the stipulations were in excess of those required by the statute and illegally inserted, the whole bond was void. But the court overruled the contention, saying (p. 360):

" That bonds and other deeds may, in many cases, be good in part, and void for the residue, where the residue is founded in illegality but not *malum in se*, is a doctrine well founded in the common law, and has been recognized from a very early period. Thus in *Pigot's case*, 11 Co. Lit. 27b, it was said that it was unanimously agreed in 14 Hen. VIII, 25, 26, that if some of the covenants of an indenture, or of the conditions endorsed upon a bond, are against law, and some are good and lawful, that in this case the covenants or conditions which are against law are void *ab initio* and the others stand good."

So in *Gelpcke* v. *Dubuque*, 1 Wall. 175, this court said, in reference to a similar contention in a suit on a contract made by the officials of the city of Dubuque (p. 222) :

" We have not, therefore, considered the questions which they present. They relate to certain provisions of the contract which are claimed to be invalid. Conceding this to be so, they are clearly separable and severable from the other parts which are relied upon. The rule in such cases, where there is no imputation of *malum in se*, is that the bad parts do not affect the good. The valid may be enforced."

We see no reason to change the views heretofore and often expressed by this court, and reiterate, as said in 135 U. S. 668, "this question, therefore, must be considered as foreclosed, and no longer open for consideration."

Fourthly. It is urged that this court has no jurisdiction of this case for the reason that the Court of Appeals in its opinion does not consider the subsequent legislation passed by the State with the view of impairing the contract created by the act of 1871, but limits itself to a consideration of that act, and adjudges it void. In support of this proposition the rule laid down in *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 18, 38, reaffirmed in *Huntington* v. *Attrill*, 146 U. S. 657, 684, and *Bacon* v. *Texas*, 163 U. S. 207, 216, is cited.

In this last case the doctrine is summed up in the following statement:

"Where the Federal question upon which the jurisdiction of this court is based grows out of an alleged impairment of the obligation of a contract, it is now definitely settled that the contract can only be impaired within the meaning of this clause in the Constitution, and so as to give this court jurisdiction on writ of error to a state court, by some subsequent statute of the State which has been upheld or effect given it by the state court. *Lehigh Water Co.* v. *Easton*, 121 U. S. 388; *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 18; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 109. . . . If the judgment of the state court gives no effect to the subsequent law of the State, and the state court decides the case upon grounds independent of that law, a case is not made for review by this court upon any ground of the impairment of a contract. The above cited cases announce this principle."

It is true the Court of Appeals in its opinion only incidentally refers to statutes passed subsequent to the act of 1871, and places its decision distinctly on the ground that that act was void in so far as it related to the coupon contract, but at the same time it is equally clear that the judgment did give effect to the subsequent statutes, and it has been repeatedly

held by this court that in reviewing the judgment of the courts of a State we are not limited to a mere consideration of the language used in the opinion, but may examine and determine what is the real substance and effect of the decision.

Suppose, for illustration, a state legislature should pass an act exempting the property of a particular corporation from all taxation, and that a subsequent legislature should pass an act subjecting that corporation to the taxes imposed by the city in which its property was located, and that, on the first presentation to the highest court of the State of the question of the validity of taxes levied under and by virtue of this last act, that court should in terms hold these city taxes valid notwithstanding the general clause of exemption found in the prior statute. In that event no one would question that this court had jurisdiction to review such judgment, and inquire as to the scope of the contract of exemption created by the first statute. Suppose, further, that this court should hold that the first statute was valid and broad enough to exempt from all taxation, city as well as state, and adjudge the last act of the legislature void as in conflict with the prior; and that thereafter the city should again attempt to levy taxes upon the corporation, and that upon a challenge of those taxes the state court should say nothing in respect to the last act, but simply rule that the original act exempting the property of the corporation from taxation was void, could it fairly be held that this court was without jurisdiction to review that judgment, a judgment which directly and necessarily operated to give force and effect to the last statute subjecting the property to city taxes? Could it be said that the silence of the state court in its opinion changed the scope and effect of the decision? In other words, can it be that the mere language in which the state court phrases its opinion takes from or adds to the jurisdiction of this court to review its judgment? Such a construction would always place it in the power of a state court to determine our jurisdiction. Such, certainly, has not been the understanding, and such certainly would seem to set at naught the purpose of the

Federal Constitution to prevent a State from nullifying by its legislation a contract which it has made, or authorized to be made. In *Hickie* v. *Starke*, 1 Pet. 94, 98, Chief Justice Marshall, delivering the opinion of the court, said :

"In the construction of that section (the twenty-fifth) the court has never required that the treaty or act of Congress under which the party claims, who brings the final judgment of a state court into review before this court, should have been pleaded specially or spread on the record. But it has always been deemed essential to the exercise of jurisdiction in such a case that the record should show a complete title under the treaty or act of Congress, and that the judgment of the court is in violation of that treaty or act."

And in *Willson* v. *Blackbird Creek Marsh Company*, 2 Pet. 245, 250, the same Chief Justice also said :

"But we think it impossible to doubt that the constitutionality of the act was the question, and the only question, which could have been discussed in the state court. That question must have been discussed and decided. . . . This court has repeatedly decided in favor of its jurisdiction in such a case. *Martin* v. *Hunter's Lessee*, 1 Wheat. 304 ; *Miller* v. *Nichols*, 4 Wheat. 311 ; and *Williams* v. *Norris*, 12 Wheat. 117, are expressly in point. They establish, as far as precedents can establish anything, that it is not necessary to state in terms on the record that the Constitution or a law of the United States was drawn in question. It is sufficient to bring the case within the provisions of the twenty-fifth section of the judicial act, if the record shows that the Constitution or a law or a treaty of the United States must have been misconstrued, or the decision could not be made. Or, as in this case, that the constitutionality of a state law was questioned, and the decision has been in favor of the party claiming under such law."

In *Satterlee* v. *Matthewson*, 2 Pet. 380, 410, Mr. Justice Washington observed :

. . . "If it sufficiently appear from the record itself, that the repugnancy of a statute of a State to the Constitution of the United States was drawn into question, or that

that question was applicable to the case, this court has juris-
diction of the cause under the section of the act referred to ;
although the record should not, in terms, state a misconstruc-
tion of the Constitution of the United States, or that the
repugnancy of the statute. of the State to any part of that
Constitution was drawn into question."

In *Bridge Proprietors* v. *Hoboken Company*, 1 Wall. 116, 143,
an act passed by the State in 1860 was claimed to be in viola-
tion of a contract created by an act of 1790, and it was said:

"Now, although there are other decisions in which it is
said that the point raised must appear on the record, and that
the particular act of Congress, or part of the Constitution
supposed to be infringed by the state law, ought to be pointed
out, it has never been held that this should be done in express
words. But the true and rational rule is, that the court must
be able to see clearly, from the whole record, that a certain
provision of the Constitution or act of Congress was relied on
by the party who brings the writ of error, and that the right
thus claimed by him was denied. . . . It is said, however,
that it is not the validity of the act of 1860 which is com-
plained of by the plaintiffs, but the construction placed upon
that act by the state court. If this construction is one which
violates the plaintiffs' contract, and is the one on which the
defendants are acting, it is clear that the plaintiffs have no
relief except in this court, and that this court will not be dis-
charging its duty to see that no state legislature shall pass
a law impairing the obligation of a contract, unless it takes
jurisdiction of such cases."

There are also some cases involving alleged contract exemp-
tions from taxation which are worthy of notice. In *Given* v.
*Wright*, 117 U. S. 648, 655, the plaintiff in error claimed to
hold real estate exempt from taxation by virtue of a contract
alleged to have been contained in a law of the New Jersey
colonial legislature passed August 12, 1758. The validity of
this exemption had been sustained in *New Jersey* v. *Wilson*,
7 Cranch, 164, notwithstanding which for about sixty years
before the assessment in question was laid taxes had been
regularly assessed upon the land and paid without objection.

The highest court of New Jersey upheld the tax, on the ground that the long acquiescence of the landowners raised a presumption that the exemption which had once existed had been surrendered. The jurisdiction of this court to review such judgment was sustained, the court saying:

"Where it is charged that the obligation of a contract has been impaired by a state law, as in this case by the general tax law of New Jersey as administered by the state authorities, and the state courts justify such impairment by the application of some general rule of law to the facts of the case, it is our duty to inquire whether the justification is well grounded. If it is not, the party is entitled to the benefit of the constitutional protection."

In *Yazoo &c. Railroad* v. *Thomas*, 132 U. S. 174, 184, the plaintiff in error was given by its charter, which became a law on February 17, 1882, a certain exemption from taxation. In 1888 the legislature passed an act for the collection of taxes for past years, which by its terms was not applicable to railroad companies exempt by law or charter from taxation. The Supreme Court of the State held that the plaintiff was not entitled to the benefit of the exemption named in the act of 1888. The jurisdiction of this court to review that judgment was challenged. But the court, by the Chief Justice, said :

"Although by the terms of the act of 1888 the taxes therein referred to were not to be levied as against a railroad exempt by law or charter, yet the Supreme Court held that this company is not exempt, and is embraced within the act; so that if a contract of exemption is contained in the company's charter, then the obligation of that contract is impaired by the act of 1888, which must be considered, under the ruling of the Supreme Court, as intended to apply to the company. The result is the same, although the act of 1888 be regarded as simply putting in force revenue laws existing at the date of the company's charter, rather than itself imposing taxes, for if the contract existed those laws became inoperative, and would be reinstated by the act of 1888. The motion to dismiss the writ of error is therefore overruled."

In *Wilmington & Weldon Railroad* v. *Alsbrook*, 146 U. S. 279, 293, the state court, conceding the validity of a contract of exemption from taxation, held that certain property was not within its terms, and on this ground a motion to dismiss the writ of error was made by the defendant. In respect to that the Chief Justice said:

"The jurisdiction of this court is questioned, upon the ground that the decision of the Supreme Court of North Carolina conceded the validity of the contract of exemption contained in the act of 1834, but denied that that particular property was embraced by its terms; and that, therefore, such decision did not involve a Federal question.

"In arriving at its conclusions, however, the state court gave effect to the revenue law of 1891, and held that the contract did not confer the right of exemption from its operation. If it did, its obligation was impaired by the subsequent law, and as the inquiry whether it did or not was necessarily directly passed upon, we are of opinion that the writ of error was properly allowed."

In *Mobile & Ohio Railroad* v. *Tennessee*, 153 U. S. 486, 492, 493, Mr. Justice Jackson, reviewing prior decisions, said:

"It is well settled that the decision of a state court holding that, as a matter of construction, a particular charter or a charter provision does not constitute a contract, is not binding on this court. The question of the existence or non-existence of a contract in cases like the present is one which this court will determine for itself, the established rule being that where the judgment of the highest court of a State, by its terms or necessary operation, gives effect to some provisions of the state law which is claimed by the unsuccessful party to impair the contract set out and relied on, this court has jurisdiction to determine the question whether such a contract exists as claimed, and whether the state law complained of impairs its obligation."

In the case before us, after the act of 1871, and in 1872, the general assembly passed an act requiring that all taxes should be paid in "gold or silver coin, United States Treasury notes, or notes of the national banks of the United States;" and

again, in 1882, a further statute commanding tax collectors to receive in payment of taxes "gold, silver, United States Treasury notes, national bank currency, and nothing else." This command was reënacted in the Code of 1887. Under these statutes the State demanded payment of its taxes in money and repudiated its promise to receive coupons in lieu thereof. True, in its opinion, the Court of Appeals did not specifically refer to these statutes, but by declaring that the contract provided for in the act of 1871 was void it did give full force and effect to them, as well as to the general revenue law of the State. Now, it is one of the duties cast upon this court by the Constitution and laws of the United States to inquire whether a State has passed any law impairing the obligation of a prior contract. No duty is more solemn and imperative than this, and it seems to us that we should be recreant to that duty if we should permit the form in which a state court expresses its conclusions to override the necessary effect of its decision.

It must also be borne in mind that this is not a case in which, after a statute asserted to be the foundation of a contract, acts are passed designed and tending to destroy or impair the alleged contract rights, and the first time the question is presented to the highest court of the State it takes no notice of the subsequent acts, but inquires simply as to the validity of the alleged contract. Here it appears that the state courts had repeatedly held the act claimed to create a contract valid, and had passed upon the validity of subsequent acts designed and calculated to destroy and impair the rights given by such contract, sustaining some and annulling others. Some of those judgments had been brought to this court, and by it the validity of the original act had been uniformly and repeatedly sustained, and the invalidity of subsequent and conflicting acts adjudged, and now at the end of many years of litigation, with these subsequent statutes still standing on the statute books unrepealed by any legislative action, the state court, with only a casual reference to those later statutes, goes back to the original act, and, reversing its prior rulings, adjudges it void, thus in effect putting at naught the repeated

decisions of this court as well as its own. Under such circumstances it seems to us that it would be a clear evasion of the duty cast upon us by the Constitution of the United States to treat all this past litigation and prior decisions as mere nullities and to consider the question as a matter *de novo.* It would be shutting our eyes to palpable facts to say that the Court of Appeals of Virginia has not by this decision given effect to these subsequent statutes.

Finally, it is urged that since the judgment in the trial court and prior to the decision in the Court of Appeals the general assembly of the State of Virginia passed the act of February 21, 1894, c. 381, Acts General Assembly, 1893–94, p. 381, in terms repealing the statute authorizing this particular form of suit ; that no State can be sued without its own consent ; that such consent has thus been withdrawn, and therefore the whole proceeding abates and this suit must. be dismissed. It is true that such an act was passed, and that in *Maury* v. *Commonwealth,* 92 Virginia, 310, its validity was sustained by the Court of Appeals, but the judgment in this case did not go upon the effect of that repealing statute. It was not noticed in the opinion, and the decision was not that the suit abate by reason of the repeal of the statute authorizing it, but that the judgment of the trial court be reversed, and a new judgment be entered against the petitioner for costs. If the action had abated it was error to render judgment against him for costs.

But there are more substantial reasons than this for not entertaining this motion. At the time the judgment was rendered in the Circuit Court of the city of Norfolk the act of 1882 was in force, and the judgment was rightfully entered under the authority of that act. The writ of error to the Court of Appeals of the State brought the validity of that judgment into review, and the question presented to that court was whether at the time it was rendered it was rightful or not. If rightful the plaintiff therein had a vested right which no state legislation could disturb. It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on

subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases. So, properly, the Court of Appeals, in considering the question of the validity of this judgment, took no notice of the subsequent repeal of the act under which the judgment was obtained, and the inquiry in this court is not what effect the repealing act of 1894 had upon proceedings initiated thereafter, or pending at the time, but whether such a repeal divested a plaintiff in a judgment of the rights acquired by that judgment. And in that respect we have no doubt that the rights acquired by the judgment under the act of 1882 were not disturbed by a subsequent repeal of the statute.

Even if the repeal had preceded the judgment in the trial court, or if in a proceeding like this, equitable in its nature, the mere taking of the case to the Court of Appeals operated to vacate the decree, there would still remain a serious question. When the act of 1871 was passed the coupon holder had a remedy by writ of mandamus to compel the acceptance of his coupons in payment of taxes. The form and mode of proceeding were prescribed by statute. Code Virginia, c. 151, 1873, p. 1023. On January 14, 1882, the general assembly passed the act providing a new remedy for the coupon holder. This act came before this court in *Antoni* v. *Greenhow*, 107 U. S. 769, 774, and was sustained, the court holding that while it is true that, "as a general rule, laws applicable to the case which are in force at the time and place of making a contract enter into and form part of the contract itself, and 'that this embraces alike those laws which affect its validity, construction, discharge and enforcement,' *Walker* v. *Whitehead*, 16 Wall. 314, 317," "it is equally well settled that changes in the forms of action and modes of proceeding do not amount to an impairment of the obligations of a contract, if an adequate and efficacious remedy is left." Upon this ground it was held that the new remedy being adequate and efficacious, the taking away of the old right of proceeding by mandamus was valid, and the coupon holder must be content with the new remedy. Now the statute

creating this new remedy was, as we have seen, repealed by the act of 1894. That act does not in terms revive the former remedy. Indeed, the right to use the writ of mandamus in tax cases was specifically taken away, after the act of January 14, 1882, by the act of January 26, 1882. It was said, however, in the argument of counsel that the former remedy was one arising under the common law, and that the settled law of Virginia is that when an act is passed repealing an act creating a statutory remedy it operates to revive the former common law remedy. *Ins. Co.* v. *Barley's Administrator*, 16 Gratt. 363; *Booth* v. *Commonwealth*, 16 Gratt. 519, and *Mosely, Trustee,* v. *Brown,* 76 Virginia, 419. If this be still the law of Virginia and applicable to the case at bar, so that the repeal of the act of 1882 revives the former remedy by mandamus, then it is undoubtedly true that new suits can no longer be maintained under the act of 1882, and a party must proceed by mandamus. But that is a question yet to be settled by the Court of Appeals of Virginia. It is not decided in the case of *Maury* v. *Commonwealth, supra,* and, so far as we have been advised, has not yet been determined by that court. If it shall finally be held by that court that the remedy by mandamus does not exist, then it will become a question for further consideration whether the act repealing the act of 1882 can be sustained. But it is not necessary now to determine that question, inasmuch as the judgment in the trial court was rendered, as we have seen, prior to the repealing act, and the right acquired by the judgment creditor was not and could not constitutionally be taken away.

*The judgment of the Court of Appeals will be reversed and the case remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE PECKHAM dissenting.

I dissent from the opinion and judgment of the court in this case because I think that the ground upon which the state court has based its decision deprives this court of any jurisdiction. The case having originated in a state court, we

have no jurisdiction to reëxamine its judgment unless there is some Federal question involved therein, the decision of which by the court below was unfavorable to the claim set up, and its decision was necessary to the determination of the case, or the judgment as rendered could not have been given without deciding it. *Eustis* v. *Bolles*, 150 U. S. 361.

Jurisdiction is said to exist herein because of the alleged violation of the constitutional provision denying to any State the right to pass any law impairing the obligation of a contract.

In all the litigation arising in the state courts, by reason of the subsequent legislation by Virginia upon the subject, the claim was made, on a review of the judgments in this court, that the judgments of the state courts had given effect to statutes which were passed subsequently to the original coupon statutes, and that the original contract made by those statutes had been impaired by reason of those subsequent statutes to which effect was given by the judgments of the state courts. It was the giving effect by the judgment of the court to the subsequent statutes, which it was alleged impaired the contract, that gave jurisdiction to this court to decide for itself whether there was a contract, and, if so, what the contract was, as a preliminary to the decision of the question whether the subsequent statutes impaired the contract as construed by this court. The cases in which this court decides for itself, without reference to the decision of the state court, what the contract was, are cases where there has been not only subsequent legislation which is alleged to impair the contract, but also legislation which has been given some effect to by the judgment of the state court. Such is the case of *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436, 443, and such are all the other cases decided in this court upon that subject.

If by the judgment of the state court in this case no effect has been given to any statute passed subsequently to either of the coupon acts, this court is without jurisdiction to review that judgment. *Lehigh Water Company* v. *Easton*, 121 U. S. 388; *New Orleans Waterworks Company* v. *Louisiana Sugar Refining Company*, 125 U. S. 18; *St. Paul &c. Railway*

v. *Todd County,* 142 U. S. 282; *Central Land Company* v. *Laidley,* 159 U. S. 103; *Bacon* v. *Texas,* 163 U. S. 207.

If there had never been any subsequent legislation regarding these coupon acts, and the highest court of the State had adjudged that they were void as being in violation of the constitution of the State existing at the time of their passage, of course there would be no jurisdiction in this court to review that judgment. And the state court might have decided the case in different ways, at one time holding the acts valid and subsequently holding them void, and still this court would have no jurisdiction to reëxamine the judgments of that court. This would be true even if millions of dollars had been invested in the bonds upon the strength of the judgment of the state court first given holding the acts valid.

The cases above cited show that even if there has been subsequent legislation, if the judgment of the state court does not give that legislation any effect, and decides the case without reference thereto, this court is also without jurisdiction to review that judgment.

I do not say that in order to give this court jurisdiction, the state court must in words allude to the subsequent legislation and in terms give effect to it. It may be assumed that if the real substance and necessary effect of the judgment of the state court was the determination of a Federal question or the giving effect to subsequent legislation, this court would have jurisdiction to review that judgment, notwithstanding the particular language used in the opinion. But when the case before the state court could have been decided upon two distinct grounds, one only of which embraced a Federal question, the sole way of determining upon which of those grounds the judgment was rested would be to examine the language used in the opinion of the state court. If that language showed the judgment was founded wholly upon a non-Federal question, this court would be without power to review it. Whether the state court has decided this case wholly without reference to subsequent legislation can only be learned from its opinion. To this extent it has always been within the power of the state court to determine the jurisdic-

tion of this court. If the former court chooses to decide a case upon a non-Federal question, when it might have decided it upon one which was Federal in its nature, the effect of such choice is to deprive this court of jurisdiction, no matter how erroneous we may regard the decision of the state tribunal. The power is with the state court in such cases to deprive us of jurisdiction to review its determination, and we are wholly without any power to control its action in that respect. This is what has been done, and all that has been done, in this case. The opinion of the state court shows that the judgment went upon the original and inherent invalidity of the coupon statutes and its judgment in that respect, as I shall hereafter attempt to show, gave no effect to any subsequent legislation. That is the material question in this case upon which the jurisdiction of this court hangs. Prior decisions of this court in other cases holding the contract valid, where we had jurisdiction to determine such cases, can have no effect upon the question of our jurisdiction to review the judgment in the case at bar. Prior decisions in such event constitute no ground of jurisdiction.

I concede, plainly and fully, the power of this court to review a judgment of the state court when effect has been given by that judgment to subsequent legislation claimed to impair the validity of a contract. But that vital fact must appear in order to support the jurisdiction, and without it the jurisdiction does not exist, no matter how important the question may be or how many times it may have been heretofore decided.

To say that the duty is cast upon this court to inquire whether a State has passed a law impairing the obligations of a prior contract is but to half state the case. The inquiry must be further prosecuted to the extent of learning whether the state court has, by its judgment, given effect to such subsequent legislation, and, if it has not, then no duty or right rests upon this court to review the judgment.

However true it may be that in many prior cases this court has held there was a valid contract created by the coupon statutes, so called, which could not be impaired by any sub-

sequent legislation, the fact remains that unless such subsequent legislation has been given effect to by the judgment in this case, there is not the slightest shadow of a claim for jurisdiction in this court to review that judgment. Millions or hundreds of millions of dollars may have been invested in reliance upon a judgment of this court declaring the law to be that there was a valid contract, and yet a state court might in a subsequent action adjudge that there never was a valid contract, because the statute which it was claimed created it was in violation of the state constitution. If that judgment did not, in effect, put in operation any subsequent legislation, the solemn adjudications of this court in some former cases that the contract was valid, could not affect the judgment in question nor furnish ground for the jurisdiction of this court to review that judgment. This court is not entrusted with the duty of supervising all decisions of state courts to the end that we may see to it that such decisions are never inconsistent, contradictory or conflicting. We supervise those decisions only when a Federal question arises. It is said this court is not bound to follow the last decision of a state court reversing its prior rulings upon a question of the validity of a contract, when bonds have been issued and taken in reliance upon the decision of the state court adjudging the validity of the law under which the bonds were issued. I do not dispute the proposition, but it has nothing to do with this case. Where an action has been brought under such circumstances in a Federal court, it has been frequently held that such court was not bound to follow the latest decision of the state court which invalidated the law under which bonds had been issued, at a time when the state court had held the law valid. In such case the Federal court would follow the prior decision of the state court and apply it to all the securities which had been issued prior to the time when the state court changed its decision. But such a case raises no question of jurisdiction in this court to review the judgment of a state court. When that question of jurisdiction does arise, the right of review cannot rest upon the fact that the state court has refused to follow its former decision, and, on the contrary, has directly

overruled it.  The jurisdiction of this court to review the state court in this class of cases is confined in the first instance to an inquiry as to the existence of subsequent legislation upon the subject, and if none has been enacted to which any effect has been given by the state court, this court cannot review the decision of the state tribunal, even though that decision makes worthless a contract which it had prior thereto held valid.

The cases of *Gelpcke* v. *City of Dubuque*, 1 Wall. 175, and *Railroad Company* v. *McClure*, 10 Wall. 511, illustrate this difference between the powers of this court when reviewing a judgment of a lower Federal court and its powers when reviewing a judgment of a state court.

In this class of cases the absolutely unbending and essential fact which must exist, in order to give jurisdiction to review a judgment of a state court, is subsequent legislation to which effect has been given by the judgment of the state court. This court is not the Mecca to which all dissatisfied suitors in the state courts may turn for the correction of all the errors said to have been committed by the state tribunals.  Nor is it confided to this court to supervise the judgments of a state court in all cases where we may think that court has by its later decision invalidated a contract which it had once held to be lawful, and the judgment in which this court had upheld. The right of the state court in another case to reverse its former ruling is wholly unaffected by the fact that its former judgment had been affirmed here.  Unless the Federal question exists in this case there is no ground of jurisdiction founded upon any prior decisions.

Now, has this judgment of the state court given effect to any subsequent legislation?  At the time of the passage of the coupon acts there was no prior statute in Virginia permitting taxes to be paid in coupons of any kind whatever. The sole authority for such attempted payment of taxes rested in the coupon statutes under consideration.  If they gave no such authority, then none existed, and no payment of taxes by means of coupons was valid.  This is wholly irrespective of the subsequent acts.  The state court has held the coupon

acts to be entirely void, because in violation of the state constitution in existence when they were passed. Under that decision those acts are to all intents and purposes as if they never had been passed. They therefore furnished not the slightest form of legality to a payment of taxes in coupons. It was not a statute to forbid paying taxes in coupons that was necessary in order to deprive such payments of legality. A statute, a valid statute authorizing such payment, was necessary in the first instance, and if there were no such statute there was no authority existing to receive coupons in payment of taxes. The Supreme Court of Appeals of Virginia, in a case in which it had jurisdiction, decided there was no such statute, and consequently no such authority, because the statute purporting to confer that authority was void, as in violation of the constitution of the State. This judgment did not give the slightest effect to the legislation subsequent to the coupon statutes. It simply held there were no coupon statutes, because those which purported to be such were totally void. No subsequent statute was necessary, and none such was given effect to. Striking down the coupon statutes effectually destroyed any assumed right to pay taxes in coupons, and the subsequent legislation was needless and ineffectual. Thus the whole groundwork upon which to base our jurisdiction in this case falls to the ground, and we are left to maintain it upon the insufficient claim of prior decisions of this court.

In truth, the particular question decided in this case has never been before this court. In some of the former cases this court decided the general proposition that the coupon legislation was valid and created a contract. After it had thus decided, a case came before it where a subsequent statute provided that, in the case of the school tax, coupons should not be received in payment thereof. The state court had decided that the coupon statute was invalid so far as it related to the school tax, because the constitution in existence when the coupon acts were passed required in substance that such tax must be paid in lawful money, and consequently the coupon act was unconstitutional as to such tax. This court

affirmed that judgment. *Vashon* v. *Greenhow*, 135 U. S. 662, 713. Part of the coupon statute was thus held invalid by the state court and also by this court.

The State had also passed a subsequent statute providing that the tax for a license to retail liquor should be paid in lawful money. This court (affirming in that respect the court below) held that act valid, because it was in effect a regulation of the liquor traffic, and the State could at all times legislate upon that subject, notwithstanding the coupon acts and the alleged contract therein created. *Hucless* v. *Childrey*, 135 U. S. 662, 709. Both of these decisions were made subsequently to the time when this court had held the coupon statute valid, and that a valid contract was therein created.

The state court has now decided in this case that as the coupon acts were invalid as to the payment of the school tax in coupons, (a proposition concurred in by this court,) the result was that the whole acts were invalid, that they could not stand partly valid and partly void, and that the whole coupon scheme was unconstitutional. This phase of the controversy has never before reached this court, and the court has therefore never before decided this particular point. It has said, generally, that the legislation was valid, but it said so only in cases where the general power of the legislature to enact the coupon statutes was in question, and it has never decided squarely the point that if the coupon acts be unconstitutional in some particulars they are nevertheless valid in all others. The fact is alluded to simply as a matter of history.

But even if it had, that fact confers no jurisdiction upon this court to review this judgment, if it otherwise is without it. In other words, because this court has heretofore decided the question of the validity of the contract, in cases where it had jurisdiction, that fact furnishes no foundation for its jurisdiction in this case, where the state court has given no effect to any subsequent legislation. Prior decision is not the foundation of jurisdiction. What I say is, that whether there have been two or more decisions, is wholly immaterial; jurisdiction cannot be taken because it is said that in a second or subsequent decision the state court did not follow its first decision

in regard to the contract, although that decision had been affirmed, as to that point, by this court.    In this decision now before us it has given no effect to subsequent legislation, and not having done so, but simply decided a question of local law regarding its own constitution, the state court has given no decision which raises a Federal question, and therefore none that this court can review.

Under all the circumstances I can only see a determination to take jurisdiction in this case simply because this court, as it is said, has in cases in which it had jurisdiction decided the question differently from the decision in this case by the state court.    That ground does not give jurisdiction, and that is the only ground that does exist.

The writ of error should be dismissed for want of jurisdiction.