LEUCH, Appellant, vs. EGELHOFF and others, Respondents.

*December 4, 1951—January 8, 1952.*

---

\* For amendment of mandate, see companion case, ante p. 354a.

*E. W. Van Dyke* and *P. F. Leuch, in pro. per.*, both of Milwaukee, for the appellant.

For the respondents city of Cedarburg and its officers there was a brief by *Walter D. Corrigan, Sr.,* and *Thomas M. Corrigan,* both of Milwaukee, and oral argument by *Thomas M. Corrigan.*

*Schanen, Schanen & Pauly* of Port Washington, for the respondents Egelhoff.

*Quarles, Spence & Quarles* and *Arthur Wickham,* all of Milwaukee, for the respondent surety companies.

CURRIE, J.   This action was previously before this court in *Leuch v. Egelhoff* (1949), 255 Wis. 29, 38 N. W. (2d) 1, in which case a summary judgment entered by the trial court in favor of the defendants was reversed.

The amended answers to which plaintiff demurred set forth as a defense the provisions of sec. 66.295, Stats., as amended in 1949, and the passage and adoption by the common council of the city of Cedarburg of a resolution enacted January 10, 1950, in conformity with such statute legally ratifying the payment of the $5,320 to the Egelhoffs and reciting that the work and labor had been performed by the Egelhoffs in good faith.

The sole question on this appeal is the validity of sec. 66.295, Stats., as amended by ch. 612, Laws of 1949. Such statute provides in part as follows:

*"Authority to pay for public works done in good faith.* (1) Whenever any city of whatever class, however incorporated, shall have received and shall have enjoyed or shall be enjoying any benefits or improvements furnished prior to March 20, 1949, under any contract which shall have been no legal obligation on any such city and which contract was entered into in good faith and has been fully performed and the work has been accepted by the proper city officials, so as to impose a moral obligation upon such city to pay therefor, such city, by resolution of its common council and in consideration of such moral obligation, may pay to the person furnishing such benefits or improvements the fair and reasonable value of such benefits and improvements."

The validity of sec. 66.295, Stats. 1941, was upheld by this court in *State ex rel. Federal Paving Corp. v. Prudisch* (1942), 241 Wis. 59, 4 N. W. (2d) 144. The only change in sec. 66.295, Stats. 1949, from the form in which it existed in 1941, is that such statute now provides that it applies to any improvements furnished prior to March 20, 1949.

Plaintiff urges that sec. 66.295, Stats. 1949, is unconstitutional because it is retroactive legislation enacted after the commencement of plaintiff's action and violates the "due process" clause of the Fourteenth amendment to the United States constitution. This very argument of retroactivity was directly passed upon by the United States supreme court in *Hodges v. Snyder* (1923), 261 U. S. 600, 601, 43 Sup. Ct. 435, 67 L. Ed. 819. Because the court's opinion in that case gives such thorough consideration to the argument advanced by plaintiff on this appeal, we quote extensively therefrom as follows:

"A single question is presented, which arises as follows: The plaintiffs in error, as resident taxpayers, filed a complaint in the circuit court challenging the validity of a con-

solidated school district which had been organized by the merger of several smaller districts, and praying that the defendants in error, as its officers, be enjoined from further maintaining schools or erecting school buildings therein, or issuing bonds thereof. The supreme court, on an appeal from the circuit court, held that the attempted organization of the consolidated district 'was not authorized by any law then in force . . . and was wholly futile' (43 S. Dak. 166, 176), and entered judgment remanding the cause for further proceedings in accordance with its decision. The legislature thereupon passed a curative act legalizing and validating all proceedings relating to the organization of any consolidated school district attempted to be made as this had been, as of the date when such district was organized. Laws S. Dak., Spec. Sess., 1920, c. 47. Before this curative act went into effect the circuit court, in accordance with the decision of the supreme court, entered judgment adjudging the invalidity of the consolidation, permanently enjoining the defendants from conducting the consolidated district, as prayed in the complaint, and awarding costs to the plaintiffs. At a later day of the term, after the curative act had gone into effect, a motion by the defendants to set aside this injunction was denied. Thereafter, on a second appeal, the supreme court held that the curative act had validated the defective organization of the consolidated district (45 S. Dak. 149), and entered the judgment now sought to be reviewed, reversing the order of the circuit court granting the permanent injunction and remanding the cause with direction to vacate so much of its judgment as awarded such injunction; but not reversing its judgment as to costs.

"The plaintiffs in error concede that the legislature, in the general exercise of its inherent power to create and alter the boundaries of school districts, may create new districts by the consolidation of others. *Stephens v. Jones,* 24 S. Dak. 97, 100. And they likewise recognize that, since the legislature had the power to ratify that which it might have originally authorized, there would have been no violation of due process if the curative act had been enacted and become effective before any adjudication had been made in the pending litigation as to the invalidity of the consolidated district. *United States v. Heinszen & Co.* 206 U. S. 370, 386; *Rafferty v. Smith, Bell & Co.* 257 U. S. 226, 232; *Charlotte*

*Harbor & Northern Ry. Co. v. Welles,* 260 U. S. 8. And see, generally as to giving effect to acts passed *pendente lite* but before the hearing, *Stockdale v. Insurance Companies,* 20 Wall. 323, 331; *Mills v. Green,* 159 U. S. 651, 656; and *Duplex Printing Press Co. v. Deering,* 254 U. S. 443, 464.

"Their sole contention is that as the curative act was not enacted until after the supreme court had decided, on the first appeal, the consolidated district was invalid, and did not go into effect until after the circuit court had entered judgment adjudging its invalidity and enjoining the defendants from further conducting its affairs, it deprived them, as applied by the supreme court, without due process, of the private property rights which had been vested in them under these adjudications.

"It is true that, as they contend, the private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation. *Pennsylvania v. Wheeling Bridge Co.* 18 How. 421, 429; *The Clinton Bridge,* 10 Wall. 454, 463; *United States v. Klein,* 13 Wall. 128, 146; *McCullough v. Virginia,* 172 U. S. 102, 124 (in which the repealing act was passed after judgment by the trial court).

"This rule, however, as held in the *Wheeling Bridge Case,* does not apply to a suit brought for the enforcement of a public right, which, even after it has been established by the judgment of the court, may be annulled by subsequent legislation and should not be thereafter enforced; although, in so far as a private right has been incidentally established by such judgment, as for special damages to the plaintiff or for his costs, it may not be thus taken away. *Pennsylvania v. Wheeling Bridge Co., supra,* pp. 431, 439. This case has been cited with approval in *The Clinton Bridge, supra,* p. 463 (likewise involving a public, as distinguished from a private, right of action), *United States v. Klein, supra,* p. 146, *Stockdale v. Insurance Companies, supra,* p. 332, and *Mills v. Green, supra,* p. 655. And so a judgment for the restitution of taxes collected under the ostensible authority of a general statute will be reversed when, after the rendition of such judgment, a statute has been passed legalizing and ratifying such taxation. *Rafferty v. Smith, Bell & Co., supra,* p. 232.

"In the *Wheeling Bridge Case,* as in the *Clinton Bridge Case,* the public right involved was that of abating an obstruction to the navigation of a river. The right involved in the present suit, of enjoining the maintenance of an illegal school district and the issuance of its bonds, is likewise a public right shared by the plaintiffs with all other resident taxpayers. And while in the *Wheeling Bridge Case* the bill was filed by the state, although partly in its proprietary capacity as the owner of certain canals and railways (9 How. 647, 648), the doctrine that a judgment declaring a public right may be annulled by subsequent legislation, applies with like force in the present suit, although brought by individuals primarily for their own benefit; the right involved and adjudged, in the one case as in the other, being public, and not private."

An annotation covering the subject of a curative statute which impairs a judgment or renders it ineffective is to be found in 25 A. L. R. 1136.

Plaintiff also urges that because counsel for the defendants mentioned the enactment of ch. 612, Laws of 1949, amending sec. 66.295, Stats., in a letter to the chief justice of this court when the motion for rehearing was pending in *Leuch v. Egelhoff, supra,* in 1949, the decision of this court in the first appeal is *res judicata* on the issue presented in the present appeal. The resolution enacted by the common council of the city of Cedarburg to conform to sec. 66.295 as so amended by the 1949 legislature, however, was not adopted until January, 1950, long after the motion for rehearing had been denied in the first appeal, so there is no merit to the contention that we are precluded from deciding the issue here presented by the doctrine of *res judicata.*

Whether the contract was entered into in good faith presents a question of fact to be determined upon the trial of the action upon its merits.

*By the Court.*—Order affirmed.

GEHL, J., took no part.