BLUM, d/b/a BLUM CONSTRUCTION COMPANY, Appellant,
v. CITY OF HILLSBORO, Respondent.

*No. 68. Argued January 6, 1971.—Decided February 2, 1971.*
(Also reported in 183 N. W. 2d 47.)

For the appellant there was a brief and oral argument by *Frank M. Coyne* of Madison.

For the respondent there was a brief by *Richard Endicott* of Hillsboro, and *Johns, Flaherty, Harman & Gillette* of La Crosse, and oral argument by *Robert D. Johns.*

CONNOR T. HANSEN, J.   For the purposes of this appeal, it would appear from the pleadings that the parties entered into a contract to do the work on the dam and lake for $47,438.50, and that the contract was let pursuant to the provisions of sec. 62.15, Stats.

In paragraph four of the complaint, the plaintiff alleged that after acceptance of the contract, the defendant through its mayor and council members inquired whether the plaintiff would be willing to do additional lake bottom excavation at the bid price of 40¢ per cubic yard; that the plaintiff advised he was willing to do so; and that the defendant, through its mayor, city council members acting in their official capacity and through council action, outlined additional areas of the lake to be excavated, prepared a written map of the areas, and drew an amendment to the contract requiring the plaintiff to excavate the additional areas of the lake.

The complaint further alleges that the plaintiff performed all the services requested by the defendant pursuant to the contract, as modified and supplemented, and that the total amount of the services performed is $153,902.50; that defendant has made payment in the sum of $81,840, but refused to pay the balance of $72,062.50.

The defendant's answer alleged that the services performed by the plaintiff under the contract total $47,438.50; and that it paid plaintiff $81,400, and counterclaims for $38,700, the amount paid the plaintiff in excess of the amount due under the contract.

The defendant does not deny that the procedure required by sec. 62.15, Stats., was followed with respect to the original contract, but alleges it was not followed in contracting for the extra work to be done by the plaintiff. The issue raised on this appeal is whether a cause of action will lie against the city under theories of unjust enrichment, equitable estoppel, or promissory estoppel, for additional work done on a public works

contract which was not let in compliance with the statutory requirements relating to competitive bidding.

## Unjust enrichment.

When sustaining the demurrer as to this alternative cause of action, the trial court correctly analyzed the law of this state. The object of statutory bidding requirements in connection with the letting of municipal contracts is to prevent fraud, collusion, favoritism, and improvidence in the administration of public business, as well as to insure that the municipality receives the best work or supplies at the most reasonable price practicable. 10 McQuillin, *Mun. Corp.* (1966 Rev. 3d ed.), p. 321, sec. 29.29. Thus recovery has been denied on the theory of unjust enrichment. This was because to permit recovery on principles of quasi contract would seriously impair the protection intended to be afforded by the bidding statutes.

However, there is a growing body of authority to the effect that to permit recovery on the theory of unjust enrichment would not lead to the evils once imagined. Although the majority of jurisdictions still deny quasi-contractual recovery, the trend is toward permitting recovery. It is now recognized that the limitation of a recovery under the theory of unjust enrichment to the value of the benefits conferred, while denying profits, will insure that the municipality receives the services at a reasonable price and prevent deliberate violations of the statute.

". . . there are many well-reasoned cases permitting quasi-contract relief, and the trend of the law is clearly this way. . . .

". . . It is suggested that quasi-contract recovery here is proper. The purpose of bid requirements is primarily to insure that municipal corporations receive goods at reasonable prices. Quasi-contractual recovery will impose upon a municipality no greater liability, and the

removal of profits will discourage repeated violations."
1 Antieau, *Municipal Corporation Law*, pp. 755, 756, sec.
10.27.

It has also been stated that an effective remedy to
protect the taxpayer has been established by the device
of taxpayers' actions to vindicate a public right; and that
judicial remedies in equity are more likely to prevent
injustice than delegation to the municipality of the dis-
cretionary power to pay moral claims.

". . . At the time the first decisions precluding quasi-
contractual recovery in these cases were handed down,
taxpayers' actions to vindicate a public right were prac-
tically unknown, and no injunctive remedy was available
to an individual unless his own special rights were or
would be injuriously affected. The jurisdiction of courts
of equity to grant injunctive relief in such cases, which
has been extended either by judicial decision, or by stat-
ute, has created an effective machinery to protect the
taxpayer. Where these equitable remedies have been
supplemented by a proper administrative control over
local finances, there would seem to be no reason why
a municipal corporation should not be held to respond
upon principles of quasi-contract for services rendered
or materials furnished under invalid contracts *intra vires*
the corporation. Such a judicial remedy to prevent in-
justice would be far superior to the common recourse
to statutory validation, or to a delegation to the local
legislative body of the discretionary power to pay 'moral
claims.' " Tooke, *Quasi-Contractual Liability Of Munici-
pal Corporations*, 47 Harv. L. Rev. (1934), 1143, 1171.

Therefore, this decision will result in a modification
of case law of this state as it applies to what Mr. Chief
Justice ROSENBERRY referred to as proposition (2) in
*Shulse v. Mayville* (1937), 223 Wis. 624, 629, 271 N. W.
643:

"(2) A municipality does not become liable for money,
services, or goods upon principles of unjust enrichment
where it is prohibited from contracting in any other
than a specified way, as, for instance, with the lowest
bidder. . . ."

We here conclude that when work has been performed for a municipality under a contract which is *malum prohibitum* and not *malum in se*, which contract is entered into in good faith and is devoid of any bad faith, fraud or collusion, and where the statute imposes no penalty, a cause of action based upon the equitable doctrine of unjust enrichment can be maintained. This is upon the principle that courts will always try to do justice between parties where they can do so consistently with adherence to law. Equity would favor the placing of the parties in the positions that they occupied prior to the carrying out of their engagements. However, it would appear from the pleadings in this case that such would be impossible. If the facts are as alleged, both parties are guilty of failing to respect the mandate of the bidding statute. When a municipality has received the benefits of work performed, or materials furnished, in good faith, it is not just to permit the municipality to retain those benefits without paying the reasonable value thereof.

Thus, any recovery allowed the plaintiff does not rest on the void or unenforceable contract; it must rest, if at all, upon a theory of quasi contract or unjust enrichment. This view leaves no room to say that a promise to pay is implied where no valid contract existed, or to prove a cause of action on *quantum meruit* for such a view would have the effect of recognizing the unrestricted right of the parties to disregard the bidding statutes.

The jurisdictions which have recognized the quasi-contract or unjust enrichment theory of recovery have established various measures for the recovery of damages.[1]

We are of the opinion that in an action such as this, depending upon the obligation or duty called quasi con-

[1] Annot. (1970), 33 A. L. R. 3d 1164, *Municipality—Quasi-Contract Liability.*

tract, the measure of recovery is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff, subject to certain prescribed limitations. The question is not how much the plaintiff has parted with, but how much has the municipality benefited.

In this case, the measure of damages should be limited by at least two factors: (1) Recovery should be limited to an amount which represents the actual cost to the plaintiff, without allowing profits including overhead expense, and (2) in no event should it exceed the unit cost of the original contract. Subject to these limitations, any recovery would be limited to the value of the actual benefit conferred, as distinguished from the reasonable value of the work performed and materials furnished by the plaintiff.

Such a measure of damages does equity in that it will prohibit the municipality from benefiting at another's expense; will provide the protection to the taxpayers that the bidding statutes contemplate; and will also alert municipal officials, contractors, and furnishers of material, that the bidding statutes must be recognized.

We are also mindful of the fact that sec. 66.295, Stats., authorizes municipalities to pay the reasonable value of benefits or improvements furnished under invalid contracts entered in good faith. The statute in effect at the time this action was started reads as follows:

"66.295 **Authority to pay for public work done in good faith.** (1) Whenever any city, village or county has received and enjoyed or is enjoying any benefits or improvements furnished prior to December 1, 1960, under any contract which has no legal obligation on such city, village or county and which contract was entered into in good faith and has been fully performed and the work has been accepted by the proper officials, so as to impose a moral obligation upon such city, village or county to pay therefor, such city, village or county, by resolution of its governing body and in consideration of such moral obligation, may pay to the person furnishing such bene-

fits or improvements the fair and reasonable value of such benefits and improvements.

"(2) The fair and reasonable value of such benefits and improvements and the funds out of which payment therefor shall be made shall be determined by the governing body of such city or county. . . ."

Under the provisions of this statute, a municipality may pay for benefits or improvements furnished under a public works contract which was let without compliance with competitive bidding requirements. *Leuch v. Egelhoff* (1952), 260 Wis. 356, 51 N. W. 2d 7.

However, there are two reasons why the existence of this statute should not preclude judicial enforcement of recovery on the theory of unjust enrichment. First, the statute applies only to obligations incurred prior to the cut-off date, *i.e.*, December 1, 1960. When sec. 66.295, Stats., was enacted in 1941, it contained no cut-off date, but referred to work or contracts "heretofore" done or entered into. In *Leuch v. Egelhoff* (1949), 255 Wis. 29, 38 N. W. 2d 1, this court held that the statute applied only to work done prior to the enactment of the statute. Sub. (1) was then amended in 1949 to cover improvements or benefits furnished prior to March 20, 1949, and was amended in 1953, 1957, 1959 and 1961, extending the cut-off date. It was amended again in 1969, by ch. 403, Laws of 1969, extending the cut-off date to July 1, 1969; this amendment did not become effective, however, until February 26, 1970. Thus, at the time this action was commenced the city had no authority to pay its moral claims. In fact, municipalities had no authority to pay for benefits or improvements done in good faith after December 1, 1960, until the 1969 amendment became effective on February 26, 1970.

Second, payment under this statute is discretionary with the municipality. There appears to be no reason why a municipality may pay a moral claim in its discretion, but should not be required to do so. If judicial enforcement of the equitable remedy of unjust enrichment

is precluded where bad faith or a deliberate evasion of competitive bidding requirements is shown, the possibility that this remedy will impair the protection afforded by statutes requiring competitive bidding, is no more likely than it has been since 1941, when sec. 66.295, Stats., was first enacted.

The order sustaining the demurrer as to the alternative cause of action, based on unjust enrichment, is reversed.

### Equitable estoppel and promissory estoppel.

This court has held that a municipality may become bound by principles of equitable estoppel under some circumstances. *Eau Claire Dells Improvement Co. v. Eau Claire* (1920), 172 Wis. 240, 179 N. W. 2; *Shulse v. Mayville, supra; Marathon County v. Industrial Comm.* (1937), 225 Wis. 514, 523, 272 N. W. 374, 275 N. W. 437; *Lang v. Cumberland* (1962), 18 Wis. 2d 157, 118 N. W. 2d 114; *Harte v. Eagle River* (1970), 45 Wis. 2d 513, 173 N. W. 2d 683. However, it is generally held that a municipality is not estopped to deny the invalidity of a contract let without complying with competitive bidding requirements. 1 Antieau, *Municipal Corporation Law*, p. 753, sec. 10.27.

The measure of recovery under the doctrines of equitable estoppel and promissory estoppel differs from that of unjust enrichment. Where a contractor is permitted to recover on the theory of unjust enrichment, he is permitted to recover only the value of the benefits conferred and denied profits. Under the doctrines of equitable estoppel and promissory estoppel, the municipality would be estopped to deny the validity of the contract—thus, application of these doctrines would permit recovery at the contract price. Recovery is denied on these theories for the same reason recovery is denied on the contract. To permit recovery would impair the protection intended to be afforded by the statutes requiring competitive

bidding. It would not insure that services are received by the municipality at the lowest price practical and would not prevent repeated violation of statutes requiring competitive bidding.

The creation of an exception where, as in this case, extra work is done under a supplement to a contract which was not let in compliance with competitive bidding requirements, but at the same unit price as a valid contract awarded to the lowest responsible bidder, may not have the effect of impairing the protection intended to be afforded by statutes requiring competitive bidding. However, with regard to recovery on the contract for extra work, this court has held that changes are valid only where they do not substantially change the character of the work or unreasonably increase its cost, and are made pursuant to a provision in the contract permitting such changes. *Thomsen-Abbott Construction Co. v. Wausau* (1960), 9 Wis. 2d 225, 100 N. W. 2d 921. Moreover, sec. 62.15 (1c), Stats., permits an increase in the quantity of work to be done under contract but only to the extent of 15 percent of the cost of the original contract price, and then, only when the contract contains a clause providing for such increase. The demurrer to the alternative causes of action on equitable estoppel and promissory estoppel was properly sustained.

*By the Court.*—Order affirmed in part; reversed in part.