**FATTORE COMPANY, Inc., Plaintiff,**

v.

**METROPOLITAN SEWERAGE COM-MISSION OF the COUNTY OF MILWAUKEE, Defendant.**

No. 69–C–420.

United States District Court,
E. D. Wisconsin.

March 15, 1971.

See also D.C., 313 F.Supp. 280.

**356**

Brady, Tyrrell, Cotter & Cutler, Milwaukee, Wis., for plaintiff.

Schroeder, Gedlen, Riester & Moerke, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

· This contract action was tried to the court, sitting without a jury. Post-trial briefs were submitted by the parties. The court must determine whether cer-

tain increased costs incurred during the construction in question are chargeable to the defendant.

The plaintiff urges that it is entitled to additional compensation under the "changed conditions" clause of the contract and also that it is entitled to recovery under theories of misrepresentation and breach of warranty. The defendant denies these claims and alleges that the plaintiff is barred under the "final payment" provision of the contract.

## I. FINAL PAYMENT

The defendant advanced the final payment defense in a motion considered before trial, but the court rejected the motion in order to have an opportunity to hear all the facts surrounding the transaction. Article 7 of the contract contains the following provision:

"ARTICLE 7. CONTRACTOR PRECLUDED FROM SUING OWNER— The acceptance by the Contractor of the final payment by the Owner shall be and shall operate as a release to the Owner from all claims and liabilities to the Contractor for anything done or furnished for, or relating to the work, or for any act, neglect, fault or default of the Owner or of any person relating to or affecting the work." (exhibit 22cc)

█ I find that monthly estimate no. 38 (exhibit 17) constitutes a final statement of the account. It shows that the job was completed and computes the amount due as a balance. The contract required periodic monthly payments; the last payment made by the commission was made following the completion and acceptance of the work. The defendant persuasively urges that exhibit 17 "represents a proper closeout of the contract." It contains a final accounting, showing the amount of the previous payments, a computation of certain liquidated damages (agreed to by Mr. Fattore), and disclosing the balance of $273,744. The check in such amount paid by the defendant to Fattore Company in accordance with the summation in

exhibit 17 must reasonably be construed to constitute a "final payment" under the contract.

The contract price was $2,946,822, and exhibit 17 shows as the "total value of work to date" the figure of $2,956,678. Previous payments of $2,660,986 had been made, leaving a final balance (with certain small adjustments which are not in issue) of $273,774, which sum was paid to the plaintiff.

■■ The plaintiff points out that in the defendant's worksheet pertaining to estimate no. 38 (exhibit 18), the word "final" was pencilled out. The record does not establish who did such striking; its probative value as an admission on the part of the defendant is scant since under Wisconsin law, a principal may not be bound by the admission of an agent unless it appears that the agent had authority to act. Rudzinski v. Warner Theaters, Inc., 16 Wis.2d 241, 114 N.W.2d 466 (1962). In the case at bar, we have a word stricken out, but the record is barren as to the circumstances attending such act. We do not know if it was authorized or unauthorized.

The plaintiff also argues that in certain other contracts of this defendant, the word "final" affirmatively appeared in connection with the final payment. In my opinion, the plaintiff's contention that this established the "uniform practice" of the defendant has not been adequately established.

■■ Mr. Fattore testified that he talked with Mr. Leary about withholding "a token amount, so we wouldn't have a misunderstanding because I knew there was a clause about final payment, and he reassured me there was no problem". Although this testimony was not contradicted, Mr. Leary's statement to Mr. Fattore that "there was no problem" falls short, in my opinion, of constituting a waiver of the defendant's rights under Article 7 of the contract. If the defendant is to be charged with having forsaken its protection under the formal contract between the parties, proof thereof should be clearer than that presented by Mr. Fattore's interpretation of the rather broad and precatory expression attributed to Mr. Leary. In addition, it has not been shown that Fattore Company relied on such waiver.

The plaintiff urges that before the acceptance of the June 18, 1964 payment, Mr. Fattore wrote two letters to the defendant which reserved the plaintiff's right to maintain this law suit. The letter of February 25, 1964 provides in part:

"Payment by the Sewerage Commission pursuant to the foregoing request and acceptance of such payment by Fattore Company Inc. is not to be construed as acceptance of final payment under the provisions of Article 7 of the Contract between the Sewerage Commission and Fattore Company Inc."

On May 6, 1964, Mr. Fattore wrote another letter to the defendant which reads:

"It is, however, expressly understood and agreed that Fattore Co., Inc. does not waive its right to present a claim for extra payment on its contract because of unusual and unexpected conditions encountered on the job. Rather, Fattore Co., Inc. expressly reserves to itself the right to present such a claim to the Commission and to pursue its legal remedies."

■■ These two letters clearly recognize that a final payment was being offered and were written in an effort to avoid the consequence of Article 7 of the contract. Under Wisconsin law, however, a contract cannot be modified without the consent of all parties to the contract. Nelsen v. Farmers Mutual Automobile Ins. Co., 4 Wis.2d 36, 54, 90 N.W.2d 123 (1958); Jost v. Wolf, 130 Wis. 37, 40, 110 N.W. 232 (1906). Mr. Fattore was aware of the problem concerning the final payment at the time he retained the check. His unilateral effort to relieve his company of the impact of Article 7 does not nullify that provision.

No substantial evidence has been presented in this case which would warrant my concluding that the defendant acceded to a waiver of the final payment clause or consented to the plaintiff's present interpretation of the June 18, 1964 payment. None of the facts surrounding the transaction was sufficient, in my view, to destroy the last payment's being "final".

The Fattore letters, considered in light of all the circumstances surrounding the present case, persuade me that the plaintiff's disclaimer did not entitle it to retain the check and to avoid, at the same time, the burden of its constituting a final payment. Chandler v. State Highway Board of Georgia, 61 F. 2d 601, 604 (5th Cir. 1932). See also Everlite Mfg. Co. v. Grand Valley Machine & Tool Co., 44 Wis.2d 404, 413, 171 N.W.2d 188, 192 (1969).

The defendant having met its burden of proof in establishing its defense of "final payment" under the contract, it should follow that the plaintiff's complaint must be dismissed. However, I believe it desirable for the court to pass upon the other principal contentions advanced in this case.

## II. CHANGED CONDITIONS

The Fattore Company claims that it is entitled to recovery because it encountered subsoil conditions which were contrary to those shown by the test borings supplied by the sewerage commission. The contract itself, in paragraph 20 of exhibit 22t, provides for changed conditions in the following terms:

"20. *Changed Conditions.* Should the Contractor encounter, or the Sewerage Commission discover during the progress of the work, subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, the attention of the Engineer shall be called immediately to such conditions before they are disturbed. The Engineer shall thereupon promptly investigate the conditions, and if he finds that they materially differ from those shown on the drawings, or indicated in the specifications, he shall at once make such changes in the drawings and (or) specifications as he may find necessary and any increase or decrease of cost and (or) difference in time resulting from such changes shall be adjusted as provided in Paragraph 19 of this contract." (exhibit 22t)

There can be little doubt from the evidence received at the trial that unexpected ground conditions were discovered as the plaintiff pursued its work. The plaintiff urges that it had a right to rely on the borings furnished by the sewerage commission; therefore, it committed itself to working with an open-faced shield. However, it was obliged later to abandon the shield for the balance of the tunnel because of the nature of the ground. The inability to use a shield increased the plaintiff's costs. Those costs were also increased because of the unexpected presence of silt and fine sand, which could not be dewatered as readily as the coarse materials which had been anticipated by the plaintiff.

The defendant issued "instructions to bidders", appearing as exhibit 22f, which include the following:

*"Instructions to Bidders*

"The Sewerage Commission has, so far as has been possible, located the underground and surface structures which may be encountered in constructing the work embraced in this proposal and has made test borings to determine the character of the ground likely to be encountered. Being public information, any bidder may have access to it, but the Sewerage Commission does not guarantee the correctness or accuracy of such information and does not guarantee that all the underground structures likely to be encountered are shown upon the plans, that the location of those shown is accurate, nor that the character of the ground is uniform between borings, in fact, the Engineers anticipate that, during the work, underground struc-

tures of which the Sewerage Commission has no record or information will be encountered, and that there will be variations in the character of the ground between the test borings.

"It is expected that each bidder will, prior to submitting his bid, ascertain the character of the soil through which the work is to be done, and obtain such other information as will assist him to make an intelligent bid."

The contract in question, number M–176, was awarded to Fattore Company after competitive bids had been received from various bidders. The following bids were received on the contract:

| | |
|---|---|
| Fattore Co., Inc. | $2,946,822 |
| Square Construction Co., Inc. | $3,125,840 |
| Traylor Bros., Inc. | $3,225,168 |
| W. J. Lazynski, Inc. | $3,546,042 |
| MacLean Grove & Co., Inc. | $4,417,143 |

Prior to bidding, the sewerage commission supplied bidders with copies of a "Plan and Profile" which portrayed the results of seven test borings taken along the line of sewer covered by contract M–176.

In my opinion, the plaintiff is not entitled to additional compensation under this contract, even though it found subsurface conditions different from those indicated by the test borings on the "Plan and Profile." Bidders were specifically instructed that the commission did not guarantee the correctness or accuracy of the underground conditions. The instructions also imposed upon each bidder the duty to "ascertain the character of the soil through which the work is to be done." There is nothing in the evidence which would justify the conclusion that the defendant misrepresented its findings as to the subsoil condition or withheld information in order to obtain lower estimated bids.

In addition, paragraph 20 provided a specific technique to be followed in order to increase the contractual costs. If the plaintiff felt it was entitled to relief under paragraph 20, it was specifically required that there be re-

vised plans and specifications made by the commission engineer. Under paragraph 20, it was not sufficient for the plaintiff to have reported that it found conditions different from those indicated on the drawings and specifications; it was necessary under the terms of paragraph 20 that after investigation, the commission engineer "make such changes in the drawings and (or) specifications as he may find necessary." No such changes were made in the case at bar.

The requirement that the drawings and specifications be changed in order to qualify for extra compensation under the "changed conditions" clause is not one that the court can treat as insignificant. Without formalizing the proposed changes, the commission would be deprived of control over both the requirement for extra compensation and the amount thereof; if actual amendment of the drawings and specifications were carried out, the commission could determine when extra compensation would be required and the amount of such additional obligation.

The fact that the test borings supplied by the commission did not correctly predict the actual conditions which the plaintiff found is a circumstance which the bidding instructions contemplated. In exhibit 22g, bidders are enjoined to "carefully examine the entire site of the work" so that they "may inform themselves thoroughly as to all the difficulties that may be encountered in the complete execution of all the work in accordance with the specifications and plans."

The test borings made by the commission do not purport to represent the conditions which would be found on the actual site of the sewer. The defendant's test borings were taken at 1000-foot intervals and were not offered as a guarantee of the conditions which would be found below ground at the actual site of the work. By applying their own judgment and experience, the plaintiff's experts were free to utilize the defendant's test borings in calculating their bid. The test borings accurately reflected the

conditions at the immediate points tested; they were not offered to promise anything more.

 The plaintiff argues that it would have been impossible for it, as a prospective bidder, to have conducted a thorough investigation of the proposed site, noting that boring operations conducted by the sewerage commission took 40 days. In my opinion, the impracticality of a separate investigation on the part of Fattore Company on the basis of either time or economics, cannot excuse the company from its legal and contractual obligations.

### III. OTHER THEORIES OF LIABILITY

In support of its claim that there was a breach of warranty by the defendant, plaintiff contends that there was a failure to disclose the presence of rock above the sewer grade. In my opinion, the record does not support the plaintiff's conclusion in this regard; I find no misrepresentation on the part of the defendant.

In Shulse v. City of Mayville, 223 Wis. 624, 271 N.W. 643 (1937), the Wisconsin supreme court barred imposing liability upon a municipality to a contractor upon the principle of unjust enrichment. However, in the recent case of Blum v. City of Hillsboro, 49 Wis.2d 667, 183 N. W.2d 47 (1971), a new rule was adopted by the Wisconsin supreme court, which held that a vendor or contractor could maintain an action for unjust enrichment against a municipal corporation under a defective contract, provided there was no bad faith, fraud or collusion. The court said at page 671, 183 N.W.2d at page 49:

"The object of statutory bidding requirements in connection with the letting of municipal contracts is to prevent fraud, collusion, favoritism, and improvidence in the administration of public business, as well as to insure that the municipality receives the best work or supplies at the most reasonable price practicable. 10 McQuillin, Mun.Corp. (3d ed.), p. 321, sec. 29.29, (1966 Revised Vol.). Thus recovery has been denied on the theory of unjust enrichment. This was because to permit recovery on principles of quasi-contract would seriously impair the protection intended to be afforded by the bidding statutes."

 Although Fattore Company has not relied upon Blum v. City of Hillsboro, it is my opinion that no support for the plaintiff's position can be found therein; this is not a case of unjust enrichment; the plaintiff submitted a firm bid of $2,946,822, and when the last payment was made by the sewerage commission, the amount of $2,956,678 was paid to the contractor. It is thus apparent that the municipality has not been unjustly enriched but, on the contrary, it has paid the full amount which it had obligated itself by contract to pay. The case at bar is not one in which a municipality is seeking to retain benefits under an invalid contract without paying the reasonable value thereof, but rather it is one in which the plaintiff seeks to impose extra charges upon the municipality in performing under a valid and enforceable contract for a fixed price.

This decision shall constitute the court's findings of fact pursuant to Rule 52(a), Federal Rules of Civil Procedure.

Now, therefore, it is ordered that the plaintiff's action be dismissed upon its merits and that judgment be entered in favor of the defendant for its costs in this action.