Roger SCHMIDT, Plaintiff,

v.

TOWN OF ALVIN and Robert and Barbara
Norman, Defendants-Respondents,†

EAGLE RIVER STATE BANK, Intervening
Defendant-Appellant.

Court of Appeals

*No. 87–2430. Argued May 31, 1988.—Decided July 19, 1988.*

(Also reported in 429 N.W.2d 541.)

† Petition to review denied.

For intervening defendant-appellant there was a brief and oral argument by *D.J. Weis* and *Johnson, Weis, Paulson & Priebe, S.C.,* of Rhinelander.

For defendants-respondents there was a brief and oral argument by *Fred W. Kawalski* and *Whiting & Kawalski,* of Antigo.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Eagle River State Bank appeals a judgment declaring its loan agreement with a Forest County municipality unenforceable. The promissory note from the Town of Alvin was obtained without compliance with the municipal borrowing provisions of sec. 67.12(12)(e), Stats. The bank argues that the loan was valid under several different theories and, alternatively, that it is entitled to restitution of the loan proceeds. The trial court in voiding the loan ordered the transfer to the bank of the real estate purchased with the loan. Because we agree with the trial court that the failure to obtain a borrowing resolution from the town board of supervisors nullified the transaction, we affirm the declaratory judgment voiding the loan agreement. Because the bank, however, is entitled under principles of unjust enrichment to recover its $30,000 rather than real estate, we modify the judgment to so provide.

This action was initiated by a member of the town board of supervisors who, upon learning of the unapproved loan, brought suit for rescission. The bank intervened, asking the court to declare the agreement valid, and the supervisor thereafter abandoned his suit. The case proceeded on the bank's cross-claim seeking to validate the transaction between the town and the bank. The trial court held an evidentiary hearing. The evidence established that at a special town meeting held Saturday, August 31, 1985, the people of the Town of Alvin authorized the purchase of a building and land to be used for municipal purposes; however, the method of financing was not determined. The town board of supervisors never met to approve a borrowing resolution. Immediately after

809

the meeting, the town chairman, apparently unfamiliar with statutory borrowing requirements, contacted the bank about a loan to finance the transaction. The bank provided the chairman the blank forms needed to process the loan, and he returned them incomplete except for the signatures of the chairman, town clerk, and town treasurer. The bank filled in the forms after the signatures were affixed. Contrary to fact, the completed forms asserted that the requirements of sec. 67.12(12)(e) had been met. After the forms were completed, the loan was granted and the proceeds paid directly to the real estate sellers, Robert and Barbara Norman.

Section 67.12(12)(e)1 provides in relevant part:

> (12) Borrowing on promissory notes.
>
> . . . .
>
> (e) Before such loan ... is made:
>
> 1. The governing body of the municipality shall adopt and record a resolution specifying the purposes and the amount of the note, the instalments and the rate of interest, and levying a direct annual irrepealable tax sufficient to pay each installment, and the interest, as it becomes due and payable.

While the bank concedes that there was a failure to comply with these provisions, it first argues that any defects are cured by sec. 67.02(2), Stats. We are not persuaded. Section 67.02(2) provides:

> Defects and irregularities in any proceeding on or after January 1, 1922, which is for a lawful purpose, is unaffected by fraud, and does not exceed any statutory or constitutional limitation of amount, does not invalidate the bonds issued or the indebtedness incurred after the bonds have been

810

sold or hypothecated and the proceeds received and appropriated by the municipality to a lawful purpose, nor after the performance of a contract has been entered upon by a party whose performance of the contract is the consideration for the bonds or other obligations.

Although sec. 67.02(2) was adopted in 1921, it has never been explicitly interpreted by an appellate decision. At least two supreme court decisions, however, have *sub silentio* rejected its application to unauthorized promissory notes.

In *Richland County Bank v. Joint School Dist. No. 2*, 213 Wis. 178, 250 N.W. 407 (1933), a bank loaned funds on the basis of notes signed by a school district treasurer. That officer, duly elected and acting under color of office, represented both orally and in writing that the loans had been properly authorized by the school board. The bank sued to enforce the notes and, in the alternative, for restitution. The bank's claim to enforce the notes was rejected because no certified copy of a borrowing resolution was obtained by the bank. At least some of the loans were disbursed by the bank in payment of school obligations authorized by both the school district clerk and its director. *Id.* at 182, 250 N.W. at 409. The decision makes no mention of sec. 67.02(2).[1]

Another decision dealing with an unauthorized promissory note, *Town of Swiss v. United States Nat'l*

[1]The peculiar facts of *Richland County Bank* also caused the supreme court to reject an award of restitution upon equitable principles. The town official had appropriated some of the proceeds for his personal benefit. Thus, the reasons for denying payment under principles of unjust enrichment in that case are not applicable here.

*Bank,* 196 Wis. 171, 173, 218 N.W. 842, 843 (1928), made this observation:

> All who take the obligation of a town to pay money must ascertain for themselves whether the obligation was "issued by competent authority .... If not issued by competent authority, the town is not liable. The law is well settled that the officers of a town, or of any municipal corporation, cannot bind it, when they transcend their lawful powers." If legislative authority is wanting, bonds or notes given by towns are void. (Citations omitted.)

The *Town of Swiss* court makes no mention of sec. 67.02(2) as legislative authority for curing the defective promissory note involved.

We conclude that the supreme court's rulings were not oversights but instead recognized the narrow limits of sec. 67.02(2). This is also the conclusion of the author of a comprehensive survey on municipal borrowing law, Bugge, *Wisconsin Municipal Indebtedness: Part III—The Effects of Irregularities in Municipal Obligations and Contracts,* 1964 Wis. L. Rev. 549, 594: "Section 67.02(2) clearly has very limited application. It does not cover municipal contracts, unless bonds are issued in payment, nor does it seem to apply to municipal notes, scrip, or orders." The policy underlying the legislature's reluctance to validate defective borrowing is explained by the same author:

> Municipal corporations are creatures of statute with strictly limited powers. These limitations are intended to protect the corporate members .... [U]nlike private corporations, ... municipal corporations have a captive membership most of whose

assets are potentially subject to taxation. Consequently, both the court and the legislature have permitted municipal corporations, far more often than private corporations, to raise a claim of ultra vires or procedural defect as a defense to corporate obligations.

*Id.* at 551 (footnote omitted).

■

Contrary to the bank's next assertion, sec. 67.02(3) does not cure this otherwise invalid transaction. This subsection states:

> A legislative, judicial or administrative determination, for any reason, that a municipality may not spend the proceeds of contracted debt, or that it has spent the proceeds for a purpose other than the stated purpose for which the debt was contracted or for a purpose for which a municipality may not spend money, shall not affect the enforceability of the debt nor the evidence of indebtedness for it.

On its face, this subsection presupposes the validity of the initial debt. To interpret it beyond its plain meaning would validate any municipal borrowing no matter how egregious the defect. The bank's reading would render the requirements of sec. 67.12(12)(e) superfluous, a statutory construction that should be avoided. *See Village of Menomonee Falls v. Michelson,* 104 Wis. 2d 137, 151, 311 N.W.2d 658, 665 (Ct. App. 1981).

■

The bank next asserts that it is entitled to the rights of a holder in due course of a negotiable instrument. We need not decide whether the bank fails as a holder in due course because it had reason to know the town's defenses. *See* secs. 403.302(1)(c) and

813

401.201(25), Stats. It is sufficient to note that sec. 403.305 provides that to the extent that one is a holder in due course, he does not take the instrument free from defenses of illegality such as renders the obligation a nullity. The bank proposes that any illegality was negated by the curative provisions of sec. 67.02(2) and (3), propositions that we have already rejected. The initial loan was illegal. Because the policy to protect the taxpayers from the unauthorized acts of its elected officials outweighs the policy favoring free flow of commercial paper, this illegality renders the obligation a nullity. *See* White & Summers, Handbook of the Law Under the Uniform Commercial Code, sec. 14–9, 572 (2d ed. 1980), and cases collected therein. The bank therefore is not free from the defense asserted here.

The bank next argues that the loan should be enforced because the town chairman was acting within the scope of his apparent authority; therefore, his actions could bind the town. "Implied or apparent agency is established by proving: (1) [a]cts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be held; (3) reliance thereon by the plaintiff, consistent with ordinary care and prudence." *Schaefer v. Dudarenke,* 89 Wis. 2d 483, 489–90, 278 N.W.2d 844, 847 (1979). The proper inquiry here is whether the town's conduct reasonably induced the bank to believe the town chairman had authority to act for the town. *See Hollingsworth v. American Finance Corp.,* 86 Wis. 2d 172, 183, 271 N.W.2d 872, 877 (1978).

We conclude as a matter of law that the obvious and flagrant discrepancies in this transaction ren-

814

dered reliance by the bank inconsistent with ordinary care and prudence. The bank furnished the forms upon which its claim rests. The forms, prepared by the Wisconsin Bankers Association and intended for use by commercial banks in transactions governed by Wisconsin law, were largely treated as irrelevant surplusage. Exhibit A, the borrowing resolution form, was never completed and reads "(Adopted at an open Meeting Held ———, 19—)." The certificate evidencing the resolution's authenticity was signed in blank by the town clerk and town treasurer, neither of whom communicated with the bank. The information the bank added to the certificate contains manifest discrepancies: Paragraph 2. names only two existing duly qualified and acting members-elect of the town board; Paragraph 5., in contrast, refers to the affirmative vote on August 31 of five of the members-elect.[2] The certificate states "that a true and correct copy of said resolution is attached," yet it is conceded that none was attached; the installment note evidencing the loan states that the borrowing resolution was adopted on September 6, the same day the loan was closed.

The bank argues that a decision voiding the loan on the basis of the foregoing evidence will have the effect of raising the cost of loans to municipalities. It reasons that if banks cannot rely upon the assurances of town officials without scrupulous adherence to minor details, the threat of legal challenge will deter low interest loans. The flaw in the bank's argument is its characterization of the defects in this case as

[2]The parties agree that the Town of Alvin has three board members. *See* sec. 60.20(2), Stats.

inconsequential. Whether the errors and omissions in the formal loan documents standing alone are inconsistent with ordinary care and prudence need not be decided. A review of the hearing evidence reveals that not even an oral representation was made by anyone that a borrowing resolution was passed. To the contrary, the town chairman testified that not only was he unaware that a resolution was necessary, but that he never read that part of the blank form reciting that a resolution was adopted. No one testified that bank officials ever asked about a resolution. The electors' decision at a special town meeting on August 31 is not the equivalent of a formal resolution by the town board of supervisors to borrow money and levy a tax. We conclude that the bank's conduct falls below the standard necessary to invoke principles of apparent authority.

Finally, the bank argues that if the loan is void, it is entitled to restitution under equitable principles in order to prevent unjust enrichment to the town. The town agrees, and there is ample authority allowing recovery under these circumstances. *Blum v. City of Hillsboro,* 49 Wis. 2d 667, 671–72, 183 N.W.2d 47, 49 (1971). The only issue remaining is whether the proper measure of restitution is the real estate purchased with the loan or the loan proceeds themselves. The trial court awarded the former.

While acknowledging that the record is silent on the value of the land, the court noted that the town had unsuccessfully attempted to sell it and therefore "the property presumably is not worth $30,000." We conclude that the court should award the return of the loan proceeds. The town had the benefit of the

$30,000. We reject the town's argument that it never received the benefits of the loan because the $30,000 check from the bank was made payable directly to the Normans. This argument places form over substance. By awarding restitution for the money loaned, we also reject the bank's demand for interest and overhead expenses. The trial court correctly noted that unjust enrichment is not concerned with making the bank whole, but rather aims to divest the town of any gain that it has unfairly received at the bank's expense. *Id.* at 674, 183 N.W.2d at 50.

*By the Court.*—Judgment modified to allow restitution in the sum of $30,000 and, as modified, affirmed.